Milton H. TUCKER and Percy Tucker et al., etc., Defendant-Third-Party Plaintiff-Appellants,

v.

Paul RATLEY, Virginia M. Ratley, his wife and Ethel Ratley, Plaintiffs and Third-Party Defendant-Respondents.

No. 38907.

Missouri Court of Appeals, St. Louis District, Division Two.

June 13, 1978.

**798**

Charles W. Medley, Farmington, for Tucker.

Maurice Graham, Fredericktown, for Paul Ratley et al.

REINHARD, Judge.

Defendant-third party plaintiffs appeal from a judgment of the Circuit Court of St. Francois County quieting title to real estate. The court ruled that a reserved option to repurchase the real estate was void as a violation of the rule against perpetuities and as an unreasonable restraint on alienation.

The land was originally owned by Harry Tucker. On October 10, 1945, he contracted to convey the 185 acres in the parcel to Lorenzo Ratley and his wife Ethel Ratley. 65 acres of this parcel were conveyed to the Ratleys in fee and only the surface rights of the remaining 120 acres were conveyed. As to the 120 acre tract in both the contract for sale and the general warranty deed, Tucker reserved the mineral rights, the rights to ingress and egress, and the right to conduct mining operations. In addition, the grantor reserved the option to repurchase the surface rights in the 120 acre tract with insertion of the following provision:

> Subject further to the right of the party of the first part, his heirs and assigns, to repurchase from the parties of the second part, their heirs and assigns, the said surface rights in and to the aforesaid tract of land, designated herein as Tract

II, at a price not to exceed Fifty ($50.00) Dollars per acre.

Tucker died June 18, 1955, and his estate was administered in the Probate Court of the City of St. Louis. The court's Order of Final Settlement and Distribution distributed the mineral rights in the 120 acres to the testamentary trustees, defendant-third party plaintiff-appellants here, pursuant to Harry Tucker's will. No mention was made of the option to repurchase.

In April, 1968, Lorenzo and Ethel Ratley conveyed their surface rights to 40 acres of the 120 acre tract to their son Paul and his wife Virginia. Thereafter, Paul and Virginia Ratley built a home on this property, the value of which has been stipulated by the parties to be $35,000.00. They then brought this suit to quiet title to the surface rights. The testamentary trustees filed a counterclaim requesting that the court enforce the repurchase rights, not only as to Paul and Virginia Ratley's 40 acres, but also over the remaining 80 acres held by Lorenzo (now deceased) and Ethel Ratley, who were named as third party defendants. In the alternative, defendant-third party plaintiffs' counterclaim asked for damages or restitution.[1] The stipulated value of the land in question is $450.00 per acre.

The case was submitted to the court on stipulation of facts. The trial court held that the reserved repurchased rights constituted an option that was void and unenforceable as a violation of the rule against perpetuities and as an unreasonable restraint upon alienation.[2]

The rule against perpetuities provides that "no interest within its scope is good, unless it must vest, if at all, not later than 21 years after some life or lives in being at creation of the interest, plus the period of gestation." *St. Louis Union Trust*

*Co. v. Kelley*, 199 S.W.2d 344 (Mo.1947). Any future or contingent interest that may not, by its terms, vest within this period is void *ab initio*. The rule does not apply to a vested interest, however remote in time it may come into possession. *St. Louis Union Trust Co. v. Bassett*, 85 S.W.2d 569, 577 (Mo.1935). In Missouri the rule is a "possibilities" test, and not an "actualities" test; that is, in determining the validity of any future interest, the court cannot take account of subsequent actual events which would have vested an otherwise invalid interest. *Nelson v. Mercantile Trust Co.*, 335 S.W.2d 167, 172 (Mo.1960). That appellants attempted to exercise this option, ostensibly within the period of the rule, is therefore irrelevant.

Although we can find no Missouri case precisely in point, the prevailing view holds that an option to purchase real property is subject to application of the rule against perpetuities. 61 Am.Jur.2d, Perpetuities and Restraints on Alienation, § 50. Section 394 of the Restatement of the Law of Property provides:

> Subject to exceptions stated in §§ 373 (destructible interest), 397 (charity) and 400 (unissued shares of a corporation), the reservation of an option to repurchase the whole or any part of the interest conveyed, made in favor of the conveyor, is invalid, because of the rule against perpetuities, when, under the language and circumstances of the reservation, such option
>
> > (a) may continue for a period longer than the maximum period described in § 374 [rule against perpetuities]; and
> > (b) would create an interest in land, or in some unique thing other than land, but for the rule against perpetuities.

*See also* Simes & Smith, *The Law of Future Interests*, 2d Ed., § 1244, p. 159.

1. Although appellants claim the option granted a vested interest in the surface rights, they admit that neither they nor Harry Tucker has paid any real estate taxes on this 120 acre tract since the original conveyance in 1945.

2. *Kershner v. Hurlburt*, 277 S.W.2d 619 (Mo. 1955), noted the distinction between the rule

against perpetuities and the rule against restraints on alienation. "The rule against perpetuities fixes the time within which a future interest must vest, while the rule against restraints on alienation is to prevent the inalienability of present or future vested interests." *Id.* at 623.

In Missouri, it has been held that contracts, involving real property, which confer a right which may be enforced by specific performance are subject to the rule against perpetuities and to the rule against restraints on alienation. *Kershner v. Hurlburt*, 277 S.W.2d 619, 623 (Mo.1955).

*Kershner* is one of a series of Missouri cases in which the so-called right of preemption purchase was held subject to the restrictions of the rule against perpetuities. A right of preemptive purchase differs from an option to purchase in that ordinarily it gives a prospective purchaser the right to buy ahead of or before all others should the seller decide to sell the property. An option to purchase gives the purchaser a right to buy whether or not the seller wishes to sell. The latter clearly is a more substantial restraint on alienation inasmuch as it wholly eliminates a property owner's prerogative to keep possession in the event the optioner chooses to exercise the right to purchase, whereas the preemption option arises only if the owner desires to sell.

Provisions creating a right of preemptive purchase have been held to be in violation of the rule against perpetuities and/or the rule against restraints on alienation in numerous Missouri cases. *See, e. g., Kershner v. Hurlburt, supra; Davies v. McDowell*, 549 S.W.2d 619 (Mo.App.1977); *Missouri State Highway Com'n. v. Stone*, 311 S.W.2d 588 (Mo.App.1958). There is no basis for distinguishing options to repurchase from preemptive purchase rights by according them different scrutiny or by removing them altogether from the restrictions governing preemptive purchase rights. .

Courts in other jurisdictions have considered provisions reserving an option to purchase surface rights extending to an owner of the underlying mineral rights.[3] Although they are susceptible of varying interpretations, a reading of all the cases suggests a single general principle: a bare option to purchase land which is unlimited

as to time is subject to the rule against perpetuities, but an option which is appurtenant to a mineral estate and is limited to the necessary and reasonable use of the overlying surface estate for the exercise of mineral rights is a presently vested interest and free from application of the rule. *Cf. Quarto Mining Co. v. Litman*, 42 Ohio St.2d 73, 326 N.E.2d 676, 683 (1975).

The grantor here ensured the use and enjoyment of the reserved mineral estate by specifically incorporating in the reservation clause the right of ingress and egress and the right to conduct surface mining operations. Thus the option itself was not incidental to the exercise by the grantor of his right to explore for and remove the minerals; it was exercisable whether or not acquisition of the surface estate was incidental or essential to the conduct of mining operations.

 In Missouri, "[t]he owner of land containing minerals may segregate the surface rights from the underlying minerals by a conveyance in writing so that there is a complete severance of title and separate estates are created. (Citations omitted). This may be done by a conveyance of the land with an express reservation of the mines and minerals, (citations omitted) and the separate estate in the mines and minerals thus created in the grantor is the same as though there had been an express grant thereof . . . ." *Groves v. Terrace Mining Company*, 340 S.W.2d 708, 710 (Mo. 1960). Just such separate estates were created here. The grantor deeded away the surface rights. In reserving the subsurface mineral rights, the grantor created as to himself a vested interest in the separate mineral estate. The option created a contingent interest in the surface estate, subject to vesting upon exercise of the option. *Middleton v. Western Coal and Mining Co.*, 241 F.Supp. 407 (W.D.Ark.1965). There was no time limit on the contingency and therefore it violates the Missouri rule against perpetuities.

---

**3.** *See, e. g., Barton v. Thaw*, 246 Pa. 348, 92 A. 312 (1914); *Middleton v. Western Coal and Mining Co.*, 241 F.Supp. 407 (W.D.Ark.1965); *Rocky Mountain Fuel Co. v. Heflin*, 148 Colo. 415, 366 P.2d 577 (Colo.1961); *Buck v. Walker*, 115 Minn. 239, 132 N.W. 205 (1911); *Threkeld v. Inglett*, 289 Ill. 90, 124 N.E. 368 (1919).

Section 442.555, RSMo. 1969, permits reformation of a contract containing a provision violative of the rule against perpetuities if such provision, "is manifestly so essential to the dispositive scheme of the grantor, . . . that it is inferable that he would not wish the limitations or provisions which do not in themselves violate the rule against perpetuities to stand alone." The statute, by its express terms, may not be applied retroactively to the transaction here in question. Appellants argue, however, that in accordance with the "liberalizing" spirit of § 442.555, this court should recognize as an exception to the rule the reservation of a right to repurchase surface rights created contemporaneously with a reservation of the underlying mineral rights. We are not permitted by law, nor inclined as a matter of public policy, to extend the reach of the statute in order to arrive at the conclusion urged by appellants.

Having concluded that the option provision is void as a violation of the rule against perpetuities, we need not determine whether it also constitutes an unreasonable restraint on alienation.[4]

Appellants argue that, notwithstanding the denial of specific performance, they are entitled to some relief, namely restitution or damages. We cannot agree. To at once declare the option invalid under the rule, yet allow recovery of damages for the failure of the person subject to the option to conform to the agreement, would tend to compel substantial performance of the contract. Effectuation of the purpose of the rule against perpetuities requires that no recovery of damages be permitted in a case such as this. Restatement of Property, § 393, comment h, p. 2320; Simes &. Smith, *Future Interests*, 2d Ed., § 1244, p. 161.

Judgment of trial court affirmed.

4. It would appear, though we do not so hold, that because of the absence of a time limitation and the inclusion of a stipulated price, the provision imposes a substantial restraint on

STEWART, P. J., and JOSEPH J. SIMEONE, Special Judge, Chief Judge at time of submission, concur.

alienation. *See Kershner v. Hurlburt*, 277 S.W.2d 619 (Mo.1955); Restatement of Property, § 413.