VENTURE STORES, INC., Respondent,

v.

PACIFIC BEACH COMPANY, INC., Appellant.

No. WD 55151.

Missouri Court of Appeals, Western District.

Submitted Aug. 13, 1998.

Decided Nov. 10, 1998.

Neil L. Johnson, Kansas City, MO, for appellant.

Berry F. Laws, III, Kansas City, MO, for respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

PER CURIAM:

Venture Stores, Inc. ("Venture") exercised an option to purchase contained in a long-term commercial lease. Pacific Beach Company, Inc. ("Pacific Beach"), the other party to the lease, refused to perform under the option, and Venture brought an action in the circuit court for specific performance. The trial court found in favor of Venture. Pacific Beach appeals, claiming that the trial court erred in granting specific performance to Venture because it: (1) misinterpreted the lease; (2) erroneously declared Missouri law in ruling that a reasonable time to exercise the option was any time during the life of the lease; and (3) erroneously applied Missouri law in determining that open-ended purchase option provisions in lengthy leases are valid. Pacific Beach further argues that the trial

court erred when it held that Pacific Beach should pay or credit back to Venture $666,-474.00 in rent that Venture paid to Pacific Beach while the litigation was pending. Affirmed.

## Facts

On May 2, 1975, Cook United, Inc. ("Cook United"), Pacific Beach's predecessor in interest, entered into a lease ("Cook Lease") with Discount Foods—Kansas City, Inc. ("Discount Foods"), Venture's predecessor in interest. The property subject to the Cook Lease is located at the intersection of North Oak and Vivion Road in Clay County, Missouri. The property was contiguous to another parcel of land already under lease to Venture pursuant to a lease entered into in 1970 ("Rockside Lease"). The Rockside Lease had a primary term of twenty-five years with the option of six extensions of five years each. Under the Rockside Lease, Venture could terminate the lease and acquire the land at anytime during the primary term of the lease. Venture acquired title to the Rockside land in 1989.

Seven years later, Venture notified Pacific Beach that it was exercising its option to purchase the land under the Cook Lease. Article XXV of the Cook Lease contained an option to purchase the leased land for $50,-000.00 once certain conditions were met. Article XXV provided:

§ 25.1 Landlord represents and warrants that the demised premises are contiguous to, and constitute a single tract of land with, the tract of land demised by the "Rockside Lease" described below in § 25.2.

§ 25.2 Anything herein to the contrary notwithstanding Landlord agrees that Tenant may at its option terminate this lease upon notice delivered to Landlord of exercise of such option at any time after and in the event of the termination of the interest of Discount Foods–Kansas City, Inc., whether or not premature or for any reason whatsoever in that certain Lease dated April 1, 1970 between Second Rockside Corporation, as Lessor, and Discount Foods–Kansas City, Inc., as Lessee (herein called the "Rockside Lease"). Landlord

covenants and agrees that in the event of any purchase by Tenant of all or part of the property demised under the Rockside Lease, pursuant to the terms of said Rockside Lease or otherwise, Tenant shall have the right and option to purchase the demised premises from Landlord for total purchase price of Fifty Thousand Dollars ($50,000.00).

No time limit for exercise of the option was established in the lease. The initial term of the Cook Lease commenced on May 2, 1975, and was to extend through May 31, 1996, with six consecutive extended terms of five years each. The rent from June 1, 1981, through May 31, 1996, was $1.00, payable August 31, 1981. Beginning June 1, 1996, the rent was to increase, payable in quarterly installments of $13,294.88.

On May 14, 1996, shortly before its rent was scheduled to increase, Venture gave written notice to Pacific Beach of its intent to exercise the option to purchase the premises pursuant to Article XXV of the lease. In a letter dated May 22, 1996, Pacific Beach refused to recognize Venture's exercise of the option. On May 30, 1996, Venture reaffirmed its intent to exercise the option contained in the Cook Lease, and once again Pacific Beach refused to recognize Venture's option. Venture was ready, willing and able to tender the purchase price for the premises.

Venture filed suit against Pacific Beach asking for specific performance. Venture paid rent to Pacific Beach on the property while the suit was pending and asked that the rent paid after the exercise of the option be credited toward the purchase price. Pacific Beach was aware that Venture was seeking specific performance of the option and return of the rent monies paid after the date of the exercise of the option. Both sides moved for summary judgment, although both motions were subsequently withdrawn.

At trial, the parties agree that the case was ready to be tried on the record. In addition to the facts stipulated to by both sides contained in the summary judgment motions, the court considered the affidavit and deposition testimony of Mary H. Kenefick, one of the persons who negotiated and drafted the Cook Lease, as well as the testi-

mony of Kent Swank, Venture's Vice President.

The trial court rendered judgment in favor of Venture, finding:

1. The option to purchase the Premises for $50,000.00 which is contained in the Cook Lease is a valid and enforceable option.

2. Because the Cook Lease did not establish a time limit for the exercise of the option to purchase the Premises, under the circumstance of this case, a reasonable time in which to exercise the Cook Lease's option to purchase the Premises was any time during the existence of the Cook Lease.

3. Venture properly and timely exercised the Cook Lease's option to purchase the Premises for $50,000.00 by exercising the option during the existence of the Cook Lease.

4. The option to purchase the Premises for $50,000.00 which is contained in the Cook Lease should be enforced as of May 14, 1996, and Venture is entitled to specific performance and a final judgment from this Court so ordering and further ordering Pacific Beach to convey the Premises to Venture in consideration of the payment of the option price, $50,000.00, to Pacific Beach.

5. Venture should pay to Pacific Beach the amount of $56,750.00 which is the option price in addition to interest which Pacific Beach is entitled to and Pacific Beach should pay to Venture the amount of $66,474.00 or, at the parties' election, Pacific Beach should pay to Venture the net amount of $9,724.40 with the delivery of the deed as set forth above.

Pacific Beach appeals.

### Standard of Review

▪ Review is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Thus, the judgment of the trial court will be affirmed unless it is against the weight of the evidence, is not supported by substantial evidence, or it erroneously declares or applies the law. *Id.* at 32. We are primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result. *Smith v. Estate of Harrison,* 829 S.W.2d 70, 73 (Mo.App.1992). Thus, we will affirm the judgment if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient. *Id.* We defer to the trial court as the finder of fact in our determination as to whether there is substantial evidence to support the judgment and whether that judgment is against the weight of the evidence, even where those facts are derived from pleadings, stipulations, exhibits and depositions. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 868 S.W.2d 118, 120 (Mo. App.1993).

▪ In an action for specific performance, the right to sue is triggered by a party's failure to do that which is contracted for, in accordance with the procedure established by the contract. *Hart v. Dick,* 570 S.W.2d 820, 822 (Mo.App.1978). If an option contract contains the necessary provisions, specific performance may be enforced. *Dean Operations, Inc. v. Pink Hill Assocs.,* 678 S.W.2d 897, 900 (Mo.App.1984). The five required contract provisions are: (1) the parties to the contract; (2) the subject matter; (3) the promises made by both parties; (4) the price; and (5) consideration. *Id.* The court in *Frey v. Yust,* 516 S.W.2d 321, 323 (Mo.App.1974), explains:

> An option is a privilege, a right of election to exercise a privilege. As such, an option constitutes a continuing offer on the part of the vendor or owner until accepted within the time and on the terms limited in the option. When accepted, a valid agreement arises supported by mutual promises. Stated more specifically, when the offer is seasonably accepted, a new bilateral contract arises, and it is this contract which is specifically enforceable.

(Citations omitted).

### The Option Clause

▪ In its first point, Pacific Beach claims that the trial court erred in ruling that the original parties to the lease intended that the option to purchase could be exercised at any time. Pacific Beach contends that the court misinterpreted the language of the option

clause and ignored language in other parts of the lease which would lead to a contrary interpretation. Venture's position is that the trial court's determination as to the intent of the original parties to the lease is not against the weight of the evidence.

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). When investigating intent, sources outside the contract itself are often considered, i.e., subsidiary agreements, the facts and circumstances surrounding the execution of the contract, the construction the parties have placed on the contract, and other external circumstances. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995). However, where the contract is unambiguous, intent is ascertained from the contract alone. *J.E. Hathman*, 491 S.W.2d at 264. A disagreement between the parties as to the proper interpretation of the contract does not render the contract ambiguous. *Id.* In a contract, an ambiguity arises only where its terms are susceptible to fair and honest differences. *CB Commercial Real Estate Group, Inc. v. Equity Partnerships Corp.*, 917 S.W.2d 641, 646 (Mo.App. 1996). The determination of a contract's ambiguity is a question of law and properly decided by the court. *Id.*

The option in the Cook Lease reads:

§ 25.1 Landlord represents and warrants that the demised premises are contiguous to, and constitute a single tract of land with, the tract of land demised by the "Rockside Lease" described below in § 25.2.

§ 25.2 Anything herein to the contrary notwithstanding Landlord agrees that Tenant may at its option terminate this lease upon notice delivered to Landlord of exercise of such option at any time after and in the event of the termination of the interest of Discount Foods–Kansas City, Inc., whether or not premature or for any reason whatsoever in that certain Lease dated April 1, 1970 between Second Rockside Corporation, as Lessor, and Discount Foods–Kansas City, Inc., as Lessee (herein called the "Rockside Lease"). Landlord covenants and agrees that in the event of any purchase by Tenant of all or part of the property demised under the Rockside Lease, pursuant to the terms of said Rockside Lease or otherwise, Tenant shall have the right and option to purchase the demised premises from Landlord for total purchase price of Fifty Thousand Dollars ($50,000.00).

Specifically, Pacific Beach argues that the exercise of the option was not timely because the use of the phrase "in the event of" indicates that the option should be exercised at the time of the purchase or within a short time thereafter. Pacific Beach concludes that since Venture acquired the Rockside Land in 1989, Venture's exercise of the option in the Cook Lease was timely only if the option had been exercised around that time, not seven years later. Pacific Beach argues that had the parties intended that the option be exercised at any time, the words "at any time" would have been used as they were in the termination clause of the lease.

In order to make this argument, Pacific Beach equates the phrase "in the event of" with "upon" or "at the time of." Pacific Beach's interpretation strains against the language used in the contract. "In the event of" does not equate to "upon" or "at the time of." Instead, "in the event of" is read as an expression of condition, as "if." *See Committee on Legislative Research of Missouri Gen. Assembly v. Mitchell*, 886 S.W.2d 662, 664 (Mo.App.1994) (defining "if" as "in the event that"). "If" is defined as "in the event that" in both The American Heritage College Dictionary 675 (3d ed.1993) and Merriam–Webster's Collegiate Dictionary 576 (10th ed.1993).

Reading the language "in the event of" as "if" is consistent with other evidence that the trial court had before it, evidence appearing outside the four corners of the contract. The affidavit and deposition given by Mary Kenefick, the Assistant Secretary of Discount Foods in 1975, was before the trial court. Kenefick participated in the negotiation of the lease. In her affidavit she described the negotiations:

12. That Discount Foods negotiated for and obtained provisions in the Excess Parcel Lease [Cook Lease] to protect Discount Foods flexibility, in the event it acquired fee title to the Main Parcel [Rockside Lease], to make and implement any future decision to acquire fee title to the Excess Parcel based on future circumstances as they from time to time evolved.

13. That the option to purchase contained in Section 25.2 of the Excess Parcel Lease was to provide Discount Foods, in the event it purchased the Main parcel, with flexibility to purchase the Excess Parcel based on circumstances as they might from time to time exist from and after acquisition of the Main Parcel.

14. That the Excess Parcel Lease did not by its terms require that either or both of (1) the *exercise* of the option to purchase the Excess Parcel pursuant to the option granted in the Excess Parcel Lease, and (2) the *purchase* of the Excess Parcel pursuant to said option, occur *simultaneously with acquisition* of the Main Parcel, because that was *not* intended.

15. That the Excess Parcel Lease did not by its terms require that either or both of (1) the *exercise* of the option to purchase the Excess Parcel pursuant to the option granted in the Excess Parcel Lease, and (2) the *purchase* the Excess Parcel pursuant to said option, *occur within any specified period of time after acquisition* of the Main Parcel, because that was *not* intended.

16. That *neither exercisability* of the option to purchase the Excess Parcel pursuant to the option granted in the Excess Parcel Lease, *nor purchase* of the Excess Parcel pursuant to said option, was intended to be limited to *any specific time or specific period of time* upon or after acquisition of the Main Parcel, but *instead, exercisability of the option and the right of purchase pursuant thereto was intended to become effective and available in the event of acquisition by Discount Foods of all or any part of the Main Parcel and in such event was to be effective and available during the entire term of the Excess Par-*

*cel Lease,* including extensions of the term of the Excess Parcel Lease.

17. That the purchase option granted in the Excess Parcel Lease was written as it was, without any time limit on availability once it became effective, because it was believed by the drafters of the Excess Parcel Lease that, in the case of a purchase option contained in a lease, the option is available during the term of the lease and extensions of the term unless a specific limitation is stated in the lease.

In her deposition testimony, Kenefick reiterates that the option was intended to be exercisable at any time during the lease, including during the extension periods. The original parties to the lease negotiated and bargained for the option. Pacific Beach's predecessor, Cook United, was in serious financial trouble at the time and needed to get properties off of its books. The parties contemplated that the option would not be exercised until the rent on the property went from $1.00 per year to over $50,000.00 per year. This makes good business sense; it would be foolhardy for Venture to purchase the property when it was using the property practically rent free. Allowing Venture to exercise the option contained in the Cook Lease gives effect to the intent of the parties. Point I is denied.

### Venture Exercised the Option at a Reasonable Time

■ In Point II, Pacific Beach claims that the trial court erroneously declared Missouri law when it ruled that a reasonable time to exercise the purchase option was during the existence of the lease. Pacific Beach claims that the trial court's decision places an unreasonable restraint upon the property and suggests that a more workable rule would limit the time for performance to the applicable statute of limitations which, it argues, is five years. Venture argues that the trial court did not err because Missouri law fixes a "reasonable time under the circumstances" for the exercise of an option where no time for performance is fixed.

■ Agreements that impose a restraint upon alienation for an unlimited time or for a period corresponding to the rule

against perpetuities (a life in being plus twenty-one years and gestation) are generally found to be void as against public policy. *Missouri State Highway Comm'n v. Stone*, 311 S.W.2d 588, 589–90 (Mo.App.1958). Option agreements which fix no time for performance are not automatically held void, however. Instead, Missouri courts find an implied condition that the option must be exercised within a "reasonable time under the circumstances." *Kershner v. Hurlburt*, 277 S.W.2d 619, 624 (Mo.1955). Such a rule is consistent with interpretations from other jurisdictions. *See* R.A. Shapiro, Annotation, *Validity of Option to Purchase Realty as Affected by Indefiniteness of Term Provided for Exercise*, 31 A.L.R.3d 522 (1970). The trial court found that Venture had exercised its option at a reasonable time under the circumstances and that a reasonable time under the circumstances was at any time during the existence of the Cook Lease. The facts support a finding that the parties intended that the option could be exercised at any time during the life of the lease.

Pacific Beach invites us to fix a standard by which to measure a reasonable time in all cases in the interest of uniformity. It suggests that the five-year statute of limitations, § 516.120, RSMo 1994, would be a good guideline. We must decline Pacific Beach's invitation to legislate in this area, for legislation is not our function. Moreover, the phrase "reasonable under the circumstances" implies that there are factual considerations which must be taken into account when examining such questions. In other contexts, what is "reasonable under the circumstances" is a question of fact, rather than one of law. *See Hammond v. Missouri Property Ins. Placement Facility*, 731 S.W.2d 360, 365 (Mo. App.1987) (what constitutes a reasonable time to accept an offer is a question of fact); *Burton v. Auffenberg*, 357 S.W.2d 218, 222 (Mo.App.1962) (reasonable time for repudiation is a question of fact); *Detmer v. Miller*, 220 S.W.2d 739, 743 (Mo.App.1949) (reasonable time for performance of contract where contract is silent is a question of fact).

We are leery of imposing time limits for any given situation and thus restricting a party's freedom to contract. There is evidence in the record that the original parties to the contract bargained for the option clause. They were free to do so. If Pacific Beach now regrets acquiring the Cook Lease or considers that its predecessor made a bad bargain, we remind Pacific Beach that the freedom to contract includes the freedom to make bad decisions. *Gott v. First Midwest Bank of Dexter*, 963 S.W.2d 432, 439 (Mo. App.1998).

Pacific Beach relies upon *Magee v. Mercantile–Commerce Bank & Trust Co.*, 343 Mo. 1022, 124 S.W.2d 1121 (Mo.1938) and *Jones v. DeWitt*, 499 S.W.2d 524 (Mo.1973) as justification for its argument in favor of a uniform time limit. Neither *Magee* nor *Jones* is applicable. *Magee* involved an oral option with no express time limit. The court found that the five-year statute of limitations for oral contracts set the reasonable period of time in which the option could be exercised. *Magee*, 124 S.W.2d at 1126. In the case before us the option was written into a lease that was to run for a fixed period. In *Jones*, the agreement between the parties fixed a specific time for the option to be exercised. Although that time period was waived, the court held that exercise of the option after nine years was unreasonable under the circumstances. The *Jones* case is factually distinguishable. It does not stand for the proposition that there is a fixed time period for the exercise of an option. To the contrary, the *Jones* court examined all of the facts before finding that the exercise of the option in that case was unreasonable under the circumstances. The facts in the instant case are different and support the finding that exercise of the option contained in the Cook Lease seven years after the acquisition of the Rockside property was reasonable. Point II is denied.

### Venture Could Exercise the Option at any Time During the Life of the Lease

In Point III, Pacific Beach argues that the trial court erred in applying Missouri law when it determined that open-ended purchase option provisions in lengthy leases are valid and enforceable. Pacific Beach claims that under Missouri law, time is of the es-

sence for the exercise of an option, and the option in this case violated Missouri's rule against unreasonable restraints on alienation. Venture asserts that under the specific facts of this case time was not of the essence. Moreover, the option provision in the lease did not violate the rule against perpetuities or Missouri's law concerning unreasonable restraints on alienation.

■ We agree with Pacific Beach that under Missouri Law, time is of the essence in the exercise of an option. *Estate of Schler v. Benson,* 947 S.W.2d 495, 500 (Mo.App.1997). However, in the instant case, this rule is inapplicable because there was no set time in the Cook Lease for the exercise of the option. The reasonable time under the circumstances for the exercise of the option was determined to be the life of the lease. Venture exercised its option during this time. The triggering event, the acquisition of the Rockside land, could occur at any time during the life of. the lease; and as already discussed, the exercise of the option could occur at any time after that acquisition.

■ We also disagree with Pacific Beach's conclusion that the option in this case violates the rule against perpetuities and acts as a restraint on alienation. Neither proposition is true. The rule against perpetuities and the rule against unreasonable restraints on alienation are two separate and distinct doctrines. *Davies v. McDowell,* 549 S.W.2d 619, 623 (Mo.App.1977). "The rule against perpetuities fixes the time within which a future interest must vest, while the rule against restraints on alienation is to prevent the inalienability of present or future vested interests." *Kershner,* 277 S.W.2d at 623.

■ There is no suggestion that the option was not limited to the life of the lease or that the option was separate from the lease. Thus, the option in question does not violate the rule against perpetuities. One commentator explains:

The option is within the Statute of Frauds, but tenant's execution of a lease and his obligation to pay rent is sufficient consideration for the option. But inasmuch as an option is but an offer, no consideration therefor would appear to be necessary. A tenant's option to buy or renew is not affected by the rule against perpetuities if the option is exercisable not later than the end of the term. But to comply with the rule, the option must be made to end on termination of the lease, whether by breach or expiration. An option that is included in a lease is lost if not carried over into a renewal term.

An option in gross, that is, an option that is no part of a lease, has traditionally been subject to the rule against perpetuities. This makes it advisable to include the option in the lease if this is feasible. Inroads have been made on the traditional rule. Some states have adopted a wait-and-see rule that applies the rule not ab initio on the basis of what must happen eventually, but at the time of the event. Some apply a cy pres approach by reforming the instrument so as not to offend the rule.

Milton R. Friedman, Friedman on Leases, 952–55 (4th ed.1997).

■ Nor does the option in this case, as Pacific Beach insists, violate the rule against restraints on alienation. The rule against restraints on alienation "is based upon (among other things) the desirability of 'keeping property responsive to the current exigencies of its current beneficial owner' and upon the desirability of avoiding the retardation of the natural development of a community by removing property from the ordinary channels of trade and commerce." *Kershner,* 277 S.W.2d at 624. So stating, the court in *Kershner* found that a preemptive agreement between a group of adjoining landowners giving each a right of first refusal at a set price constituted a restraint upon alienation. A preemptive right differs from an option in that it gives a prospective purchaser the right to decide whether to buy the property before all others should the seller decide to sell. *Tucker v. Ratley,* 568 S.W.2d 797, 800 (Mo.App.1978). An option gives the purchaser the right to buy regardless of whether the seller wishes to sell. *Id.* Although the *Tucker* court found no reason to analyze them differently, the court in *Kershner* made a distinction between preemptive rights and options:

In *Magee v. Mercantile–Commerce Bank & Trust Co.*, 343 Mo. 1022, 1027, 124 S.W.2d 1121, 1124[5–7], we said that, to avoid the result of holding void for indefiniteness or as in violation of the rule against perpetuities options which fix no time for performance, a rule of 'reasonable time under the circumstances' should be adopted; thus, reading into an option contract, which states no time limit, a provision that it must be performed in a reasonable time under the circumstances. *See also* Annotation, 162 A.L.R. 589. But we do not understand how the 'reasonable time' rule applied to *option* contracts reasonably could be applied to a contract like the one under consideration. This because the plain implication of the instant contract is that it was to be effective during the lives of the parties and, irrespective of that, it would be most difficult ever to determine or to find any standard for determining what is a 'reasonable time under the circumstances' where the 'reasonable time' is sought to be applied to an owner-promissor rather than to an option holder. *Kershner*, 277 S.W.2d at 624.

■ *Kershner* acknowledges that not all restraints on alienation are undesirable nor should they all be prohibited. *Id.* In the instant case, the fact that there is a set purchase price for the property does not, by itself, constitute an unreasonable restraint on the alienation of the property. There is evidence that the option was bargained for and no evidence that its presence would prevent transfer of the property. As a practical matter the option clause in the lease did not prevent Pacific Beach acquiring the land from Cook United.

## Pacific Beach Should Pay or Credit Venture for Rent Paid During the Litigation

In its final point, Pacific Beach protests the trial court's ruling that Pacific Beach should pay back or credit Venture $66,474.40, the rent (with interest) Venture paid to Pacific Beach while the litigation was pending. Pacific Beach points out that Venture did not attempt to tender the option price, nor did it make its rent payments under any reservation of rights or protest. Furthermore, Pacific Beach insists that there was no bad faith or unreasonable delay on its part. Pacific Beach suggests that we view the rent payments as "reasonable compensation" for Venture's use of the property during litigation.

Pacific Beach's argument ignores the realities of the situation. The trial court found that Venture had the right to exercise the option contained in the Cook ·Lease. Had Pacific Beach recognized this right, Venture would have owned the property without any payment of rent whatsoever. It would be inequitable for Pacific Beach to retain the money Venture paid in rent during this period in addition to receiving the $50,000.00 purchase price.

■ In its argument, Pacific Beach complains that at the time Venture attempted to exercise its option, it did not tender or offer to place in escrow the $50,000.00 option price. Venture sent written notice to Pacific Beach on May 14, 1996, that it was exercising its option under the Cook Lease, stating that it "hereby exercises its option to purchase the demised premises as defined in the Lease for the option price of $50,000.00." In its letter of May 22, 1996, Pacific Beach rejected Venture's attempt to exercise its option. Nevertheless, Venture once again informed Pacific Beach that it would exercise its option and gave a date and place for tender of its performance. Pacific Beach wrote Venture that "the property owner specifically rejects any attempt to set a closing for any sale of this property. . . ." In light of Pacific Beach's stated position, any tender would have been an exercise in futility. The duty to tender is not required to preserve any right to specific performance where it is clear that the optionee does not intend to honor the option. *See Mercantile Bank of Sikeston v. Moore*, 935 S.W.2d 762, 771 (Mo.App.1996).

■ Pacific Beach also points out that Venture did not make its rental payments under any specific protest or reservation of rights. The trial court found that Venture did not relinquish any rights to recovery of rental payments because Pacific Beach was aware that Venture was seeking specific performance and return of the rental payments.

Pacific Beach does not provide any authority establishing that such protest or reservation is necessary in order for Venture to recover the rent payments under equitable principles. Venture filed suit against Pacific Beach on July 26, 1996, shortly after Pacific Beach rejected its attempt to exercise the option. The first rental payment was made to Pacific Beach in August, after the suit had been filed. In its petition, Venture sought the return of or credit for any rent it had to pay to Pacific Beach. Thus, Pacific Beach knew that Venture was contesting the payments, and it was not error for the trial court to so find.

We turn finally to the question of whether the trial court erred in finding that Venture was entitled to the return of or a credit for the monies it paid to Pacific Beach as rent during pendency of the lawsuit. The trial court found:

15. Pacific Beach would be unjustly enriched if it were permitted to keep the $66,474.40.

16. Venture had no adequate remedy at law, is entitled to have the option enforced as of May 14, 1996, and is entitled to have returned to it the $66,474.40 which Pacific Beach received from August 31, 1996 to date.

■■■ Someone who has been unjustly enriched at the expense of another is compelled to make restitution to the other. *Petrie v. LeVan,* 799 S.W.2d 632, 634 (Mo.App. 1990). The mere receipt of a benefit without a finding of unjust enrichment may not provide a basis for restitution. *Farmers New World Life Ins. Co. v. Jolley,* 747 S.W.2d 704, 706 (Mo.App.1988). There are three elements in a unjust enrichment claim: (1) a benefit conferred on a plaintiff by a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the defendant's acceptance and retention of the benefit in circumstances that would render that retention inequitable. *Zipper v. Health Midwest,* 978 S.W.2d 398, 411–12 (Mo.App. W.D.1998). These elements have been established here. In the instant case, Pacific Beach's retention of the money that Venture paid as rent during the pendency of the litigation would be unjust.

■■ Pacific Beach argues that the trial court did not find that it acted in bad faith. It concludes, therefore, that the retention of the monies that Venture paid for rent is not unjust. However, it is not necessary that Pacific Beach be proven to have acted fraudulently in order to show that its retention of the money would be unjust. *See Hoefel v. Hoefel,* 533 S.W.2d 704, 709 (Mo.App.1976). The belief that a person who has been unjustly enriched make restitution was developed in the common law courts "under an obligation, from the ties of natural justice, to refund ... as if it were upon a contract." *Petrie,* 799 S.W.2d at 634–35 (quoting *Moses v. McFerlan,* 2 Burr. 1005, 1008, 97 Eng. Rep. 676 (K.B.1760)). Venture's exercise of its option was proper. Had Pacific Beach recognized Venture's right to exercise the option, it would have had the use of the $50,000.00 payment from May 31, 1996. The trial court so recognized and awarded interest on this sum. To allow Pacific Beach to retain the rental payments in addition to this sum would not be just. Point IV is denied.

## Conclusion

The trial court's decision recognizing Venture's right to exercise its option in the Cook Lease was supported by substantial evidence and did not erroneously declare or apply the law. Venture's exercise of the option was proper under the Cook Lease and was done at a time that the court could find was reasonable under the circumstances. The court's ruling requiring Pacific Beach to return or credit the payments made to it for rent over the course of the litigation was not erroneous. The judgment is affirmed.