**SD INVESTMENTS, INC., Respondent,**

v.

**MICHAEL–PAUL, L.L.C., et al., Appellants.**

**No. WD 60255.**

Missouri Court of Appeals, Western District.

Aug. 27, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2002.

Application for Transfer Denied Dec. 24, 2002.

Marion E. Winter, Parkville, for appellants.

Patrick J. Doran, Kansas City, for respondent.

Before LISA WHITE HARDWICK, Presiding Judge, JOSEPH M. ELLIS, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Michael–Paul, L.L.C. owns a piece of real property located at 101 Southwest Boulevard in Kansas City, Missouri ("the property"). Up until May 30, 2000, Michael–Paul was owned by Verlin Boes and Robert Garcia, each of whom held a fifty-percent interest in the corporation.

Respondent SD Investments, Inc., was formed in the State of Kansas on February 26, 1998. Roland G. Cornell and Fred Wallace were made the directors of the corporation. Mr. Cornell was named President, Secretary and Treasurer of SD Investments and was issued 950 of the 1000 shares of stock issued by the corporation. Mr. Wallace was named vice-president and was issued the remaining 50 shares in the corporation.

On March 1, 1998, SD Investments' board met and authorized Mr. Wallace to hire Ralph Sander as General Manager of the restaurant the corporation was going to open in Kansas City, Smokin' Joe's Bar–B–Q. In February 1999, Sander negotiated a lease of the property between SD Investments and Michael–Paul. On February 19, 1999, Boes and Garcia signed the lease for Michael–Paul. On February 22, 1999, Sander signed the lease on behalf of SD Investments, representing himself to be the owner and president of SD Investments. In addition, Mr. Sander's wife, Jana Sander, signed the lease as a guarantor for SD Investments.

Section 9 of the Lease contained an option clause which provided that in exchange for $1,000.00 consideration, during the term of the lease, SD Investments would have an option to purchase the property for $275,000.00 plus the costs of any improvements made to the property by the Michael–Paul after April 1, 1999.

On September 20, 1999, Michael–Paul agreed to loan SD Investments $30,000.00. In conjunction with that loan, SD Investments and Michael–Paul executed the "First Amendment to Commercial and Industrial Lease Agreement." In relevant part, the amendment provided:

WHEREAS, Landlord is willing to loan monies to Tenant, specifically, $30,000.00, to complete the aforesaid improvements of Tenant to the Premises if, first, all such monies loaned are used for improvements to the Premises and for no other purposes and, second, if Tenant provides security to Landlord for the repayment of all monies loaned, said security consisting of an assignment to Landlord of and termination of Tenant's option to purchase the Premises under Section 9 of the Lease, a new option to purchase, however, to be given to Tenant upon Tenant's payment to Landlord of all monies borrowed, together with interest;

NOW, THEREFORE, in consideration of the premises, including the mutual promises forth herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

\* \* \*

3. **Assignment and Termination of Right to Purchase.** In consideration of the loan by Landlord to Tenant under this amendment, Tenant hereby assigns to Landlord Tenant's purchase option for the Premises as provided for in Section 9 of the Lease. By this assignment, Landlord and Tenant hereby agree that the purchase option provided for in Section 9 of the Lease is hereby terminated, without refund to Tenant of any monies

heretofore paid in consideration of such option; *provided, however,* that upon Tenant's timely and faithful payment to Landlord of all principal and interest due Landlord under the promissory note provided for in this amendment, Landlord shall grant to Tenant for Ten Dollars and No Cents ($10.00) a new option to purchase the Premises under the same terms and conditions as heretofore provided in Section 9 of the Lease. Tenant expressly understands that should Tenant default in any way in its obligations to pay Landlord under the promissory note provided for in this amendment, Landlord shall be under no duty or obligation to grant to Tenant a new option to purchase the Premises.

\* \* \*

10. **Further Acts.** In addition to the acts recited in this amendment to be performed by Landlord and Tenant, Landlord and Tenant agree to perform or cause to be performed any and all such further acts as may be reasonably necessary to consummate the transactions contemplated hereby, including Landlord's execution and delivery of a new option to purchase the Premises upon Tenant's payment to Landlord of all monies borrowed and interest accrued under the promissory note provided for in Section 3 of this amendment.

On October 7, 1999, SD Investments conducted a special joint meeting of the shareholders and board of directors. At that meeting, Mr. Cornell announced that he was transferring all of his shares of stock in the company to Mrs. Jana Sander and that he was resigning as an officer and director of SD Investments. Mrs. Sander was made a director of the company and was elected president.

In December 1999, Mr. Sander asked Mr. Garcia to help him exercise the option to purchase the property. Mr. Sander agreed to give Mr. Garcia a half-interest in the property if Mr. Garcia would loan him some money and co-sign the loan application. In early 2000, Mr. Garcia and Mr. Sander went to the Mission Bank on several occasions to obtain a loan of $215,000.00 to purchase the property. This agreement was kept secret from Mr. Boes.

On March 3, 2000, Mr. Garcia and Mr. Sander formed a new limited liability company, "Smokin' Joes, L.L.C.," that was to acquire and own the property. Also in early March 2000, Mr. Garcia loaned Mr. Sander $45,000.00. On March 15, 2000, SD Investments paid Michael–Paul the full principal balance plus all accrued interest on the $30,000 promissory note dated September 15, 1999.

On April 4, 2000, Mr. Wallace resigned as an officer and director of SD Investments and tendered his 50 shares of stock back to the company.

Also in early April, Mr. Boes hired a private investigator to investigate Mr. Sander and SD Investments. Through that investigation, Mr. Boes learned that Mr. Sander did not have any ownership in SD Investments and that he was not an officer of the corporation. At that time, Mr. Boes received the 1998 corporate annual report for SD Investments that had been filed on April 21, 1999. That report reflected Mr. Cornell's ownership of the corporation from its inception and that he was president of the corporation.

On April 25, 2000, Mr. Sander hand-delivered to Mr. Boes a letter signed by Mr. Sander and Mrs. Sander stating:

> This letter is to inform you that SD Investments, d.b.a.: Smokin Joe's Bar–B–Q intends to exercise the option to purchase, as referred to the lease agreement of March 3, 1999, the property located at 101 Southwest Blvd., Kansas

City, Mo. 64108. The intent will be executed on or around May 1, 2000. A copy of the letter was also mailed to Mr. Garcia.

On April 28, 2000, Mr. Boes sent a letter to SD Investments setting forth several alleged violations of the lease by SD Investments.

On May 2, 2000, an attorney representing SD Investments sent a letter to Michael–Paul stating that SD Investments had exercised its option to purchase the property as set forth in the lease agreement of "February 2, 1999."

On May 30, 2000, Mr. Garcia sold his interest in Michael–Paul to Mr. Boes. On June 5, 2000, Mr. Boes had the attorney for Michael–Paul notify SD investments that the lease agreement was being terminated effective June 15, 2000, for continuous violations of various terms of the lease.

On June 10, 2000, SD Investments filed its Petition for Equitable Relief and in the Alternative for Damages in the Circuit Court of Jackson County, Missouri. In that petition, SD Investments claimed Michael–Paul had breached the March 20, 1999, Lease Agreement by failing to honor the option clause contained in Section 9 of that agreement and sought specific performance of that clause and/or a declaration of SD Investments rights under that clause. In its answer, Michael–Paul denied that SD Investments had any option to purchase the property or that it was capable of exercising any such option.

On June 21, 2000, Michael–Paul filed a petition for Declaratory and Other Relief in the Circuit Court of Jackson County asking the court to declare the lease invalid based upon Mr. Sander's misrepresenting that he was the president and owner of SD Investments. On September 27, 2000, the two petitions were consolidated into one case.

The trial court heard the matter on November 30, 2000. On January 24, 2001, the trial court entered judgment in favor of SD Investments. In relevant part, the trial court made the following findings and conclusions:

In connection with a $30,000 loan from Michael–Paul to SD Investments, a First Amendment to Commercial and Industrial Lease Agreement was executed by Robert A. Garcia on behalf of the landlord and by Ralph Sander on behalf of the tenant, on September 20, 1999. This instrument was drafted by Michael–Paul's counsel. In this First Amendment, the tenant assigned to the landlord the tenant's purchase option contained in Section 9 of the original Lease Agreement, in consideration of the $30,000 loan. The First Amendment provided that tenant would reacquire this purchase option upon tenant's re-payment of the loan in full. Both Robert Garcia and Ralph Sander testified that SD Investments repaid the loan in full on March 15, 2000. The First Amendment states that this purchase option would reissue to the tenant for the nominal consideration of Ten Dollars and No Cents ($10.00). Ralph Sander testified that SD Investments provided consideration in excess of this nominal amount around the time that the $30,000 loan was repaid in full.

\* \* \*

The Court further concludes as a matter of law that the purchase option contained in Section 9 of the Lease Agreement is valid and enforceable and that SD Investments paid consideration for this purchase option. The Court further concludes as a matter of law that SD Investments held all rights and privileges under this purchase option when it

repaid in full the $30,000 loan from Michael–Paul on March 15, 2000.

The Court further concludes as a matter of law that Michael–Paul's refusal to accept SD Investments exercise of the purchase option on April 25, 2000 constitutes a breach of the agreement between the parties, and that Michael–Paul has thereby wrongfully prevented SD Investments from acquiring title to the property.

The Court further concludes as a matter of law that the purchase price on exercise of the option is $275,000.

\* \* \*

The Court further concludes as a matter of law that the fact that SD Investments may not have formally presented a ten dollar bill to Michael–Paul when SD Investments repaid in full the $30,000 loan does not prohibit SD Investments from enforcing the purchase option contained in Section 9 of the Lease Agreement. Ralph Sander testified that SD Investments had provided consideration in excess of ten dollars to Michael–Paul around the time that the loan was repaid. Further, such contractual recitals "are the technical words used to express nominal consideration" and can be "treated as mere surplusage."

\* \* \*

IT IS NOW ORDERED ADJUDGED AND DECREED that plaintiff SD Investments, Inc., is the lawful and rightful owner of the purchase option contained in Section 9 of the Commercial and Industrial Lease Agreement entered into by and between Michael–Paul, LLC and SD Investments, Inc. on February 22, 1999, and

IT IS FURTHER ORDERED ADJUDGED AND DECREED that on April 25, 2000, plaintiff SD Investments, Inc., properly and rightfully exercised its option to purchase from Michael–Paul LLC, the property . . .

Michael–Paul appeals from this judgment.

■■■ Our review of this court tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment unless it is against the weight of the evidence, is not supported by substantial evidence, or it erroneously declares or applies the law. *Id.* at 32. Our primary concern is the correctness of the trial court's judgment, not the route it took to get to that result, and therefore, we will affirm the judgment if it is supported by any reasonable theory, even if different from that expressed by the trial court. *Venture Stores, Inc. v. Pacific Beach Co.,* 980 S.W.2d 176, 180 (Mo.App. W.D.1998).

In its first point, Michael–Paul claims the trial court erred as a matter of law in finding that a valid and enforceable option existed under Section 9 of the Lease agreement. Michael–Paul argues that Section 9 was specifically terminated by the Amended Lease Agreement and that SD Investments had never paid the $10.00 consideration required to obtain a new option in accordance with the terms of the Amended Lease Agreement.

■■■ " 'The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention.' " *Id.* at 181 (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973)). "We use the plain, ordinary and usual meaning of the contract's words and consider the document as a whole." *State ex rel. Missouri Highway & Transp. Comm'n v. Maryville Land Partnership,* 62 S.W.3d 485, 491 (Mo.App. E.D.2001). "Each term and clause is construed to avoid an effect that renders other terms

and provisions meaningless." *Id.* at 492. "A construction attributing a reasonable meaning to each phrase and clause, and harmonizing all provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *Id.*

■ The First Amendment clearly treats the "assignment" and "termination" of the option in Section 9 of the Lease as a security interest being granted to Michael–Paul in relation to the loan to SD Investments and provides that a new option will be given to SD Investments upon satisfaction of the promissory note. It states that "upon Tenant's timely and faithful payment to Landlord of all principal and interest due Landlord under the promissory note provided for in this amendment, Landlord shall grant to Tenant for Ten Dollars and No Cents ($10.00) a new option to purchase the Premises under the same terms and conditions as heretofore provided in Section 9 of the Lease." The First Amendment further provides that Michael–Paul shall execute and deliver "a new option to purchase the Premises upon Tenant's payment to Landlord of all monies borrowed and interest accrued under the promissory note." It is uncontroverted that Michael–Paul failed to perform this obligation.

While Michael–Paul contends that the ten dollars referred to in the First Amendment was not paid and that this lack of that consideration should serve to bar SD Investments from exercising the option contemplated in the First Amendment, the payment of that amount was not required under the terms of the First Amendment to give rise to Michael–Paul's obligation to execute and deliver a new option to SD Investments upon the repayment of the promissory note. As noted, Section 10 of the First Amendment provided that Michael–Paul would execute and deliver the option "upon Tenant's payment to Landlord of all monies borrowed and interest accrued under the promissory note provided for in Section 3 of this amendment." It did not require that the nominal consideration of $10.00 be paid prior to execution and delivery of the option.

Unquestionably, the real consideration contemplated for SD Investments re-acquisition of the option to purchase the property was the repayment of the loan, and the payment of the nominal sum of ten dollars was not required before Michael–Paul's obligation arose to execute and deliver a new option to SD Investments. While SD Investments may have a contractual obligation to pay Michael–Paul ten dollars subsequent to the execution and delivery of the new option, the payment of that sum was not a condition precedent to Michael–Paul's contractual obligation to execute and deliver a valid and enforceable option to SD Investments.

■ Moreover, an option is merely a continuing offer to sell property. *I.R. Kirk Farms, Inc. v. Pointer*, 897 S.W.2d 183, 185 (Mo.App. W.D.1995); *HGS Homes, Inc. v. Kelly Residential Group, Inc.*, 948 S.W.2d 251, 255 (Mo.App. E.D. 1997). Consideration is only necessary to make it irrevocable. *I.R. Kirk Farms*, 897 S.W.2d at 185. And "where the option is incorporated into a larger real estate contract or lease, the mutual considerations supporting the entire contract or lease support the option provision." *HGS Homes*, 948 S.W.2d at 255. In this case, the true consideration for the option provision was the payment of the promissory note, and its repayment triggered the grant of the option "under the same terms and conditions as heretofore provided in Section 9 of the Lease."

■ While Michael–Paul failed to execute a new document commemorating the

option, the First Amendment expressly contemplates that the option that would arise after the repayment of the loan was to be "under the same terms and conditions as heretofore provided in Section 9 of the Lease." Accordingly, the terms of the option that Michael–Paul should have delivered to SD Investments are readily ascertainable and are reflected in writing in the First Amendment and Section 9 of the Lease. Read together, these documents contain all of the elements necessary to satisfy the statute of frauds and to establish a valid and enforceable option contract. *See In re Estate of Looney*, 975 S.W.2d 508, 515 (Mo.App. S.D.1998). Thus, despite Michael–Paul's breach of the terms of the First Amendment and failure to execute a new written option, the elements of the option contract are readily ascertainable from the previous writings, and the trial court could reasonably enforce the terms of that option.

The trial court did not err in finding that a valid and enforceable option arose upon the repayment of the promissory note. Point denied.

■■■ In its second point, Michael–Paul contends the Lease agreement and the amendment thereto prohibited SD Investments from the assignment of any of its rights or interests thereunder without the written consent of the Lessor; that SD Investments breached that provision when a majority of the corporation's stock was transferred from Mr. Cornell to Mrs. Sander; and that it was, therefore, entitled to void the lease.[1]

Michael–Paul did not allege in its petition that SD Investments breached the lease by virtue of the stock transfers. Likewise, it made no mention of the stock transfers or a potential breach of the lease by virtue of those transfers, as an affirmative defense or otherwise, in its answer to SD Investments' petition. Nor did it assert in its "Motion To Set Aside Judgment, To Amend Judgment, Or, In The Alternative, For A New Trial" that the trial court erred in failing to find that SD Investments breached the lease because its consent was not obtained prior to the stock transfers.

In addition, the letter from Verlin Boes to SD Investments dated April 28, 2000, in which Michael–Paul for the first time asserted that SD Investments had violated various provisions of the lease, did not list ownership changes or assignment as one of the alleged violations. Yet Mr. Boes knew as early as April 2000, prior to exercise of the option, that ownership of the corporation was different than what he had believed. Moreover, neither Verlin Boes nor Robert Garcia, Michael–Paul's members at the time of the transfers, testified that they opposed the transfer of stock to Mrs. Sander or that they would have reasonably withheld consent to such a transfer. And finally, the only time Section 12 of the lease (the assignment and subletting provision) is mentioned in the entire record before us is a brief reference in Michael–Paul's closing argument, but, even then, it was not made as a contention that SD Investments had breached the lease by virtue of the stock transfer.

In short, Michael–Paul never notified SD Investments that it was claiming a breach of the lease by virtue of stock

1. Section 12 of the Lease generally provides that assignment and subletting are prohibited without the prior written consent of Lessor. It further provides that Lessor will not unreasonably withhold consent. Finally, it includes a provision declaring that any transfer of stock representing a majority interest in the Tenant corporation shall be deemed an assignment. Michael–Paul's argument is based on the fact that it did not give prior written consent to the transfer of stock from Mr. Cornell to Mrs. Sander.

ownership changes; it never pleaded a breach of the lease by virtue of stock ownership changes; it presented no evidence that it would or could have reasonably withheld consent to any transfer; and it did not assert in its post-trial motion that the trial court erred in failing to find that SD Investments breached the lease by virtue of the stock transfers.

 "An issue that is not advanced in the trial court is not preserved for appellate review." *Scism v. Scism,* 844 S.W.2d 506, 507 (Mo.App. E.D.1992). "Even in a court-tried case, where a post-trial motion is not necessary to preserve an otherwise properly raised issue for appellate review, the appellant must make some effort to bring the alleged error to the trial court's attention." *McMahan v. Missouri Dept. of Soc. Servs., Div. of Child Support Enforcement,* 980 S.W.2d 120, 126 (Mo.App. E.D.1998). Examination of the record before us makes it crystal clear that Michael–Paul neither pleaded nor presented the issue here raised in its Point II in the trial court. Consequently, we find this claim of error has not been preserved for review. Point denied.

 Michael–Paul's third point asserts that the trial court erred by failing to equitably award it prejudgment interest from the date the purchase price would have been paid if the purchase under the option had occurred on June 1, 2000. It contends that it was inequitable for the trial court to grant SD Investments a credit for the rent it paid after June 1, 2000, without granting it interest on the purchase price.

Michael–Paul relies on *Venture Stores, Inc. v. Pacific Beach Co.,* 980 S.W.2d 176 (Mo.App. W.D.1998), as support for its argument. In that case, Venture leased property from Pacific Beach pursuant to a long-term lease. *Id.* at 179. The lease contained an option to purchase, which

Venture exercised. *Id.* Pacific Beach refused to perform under the option and Venture brought an action for specific performance. *Id.* During the pendency of the action, Venture continued to pay rent pursuant to the lease. *Id.* The trial court ultimately found in favor of Venture and, among other things, ruled that Pacific Beach should pay or credit back to Venture the rent that Venture had paid to Pacific Beach while the litigation was pending. *Id.* at 180. Pacific Beach appealed, contending *inter alia,* that the trial court erred in requiring Pacific Beach to pay back the rent that was paid during the course of litigation. *Id.* at 185. This court affirmed the trial court's ruling, holding that "[i]t would be inequitable for Pacific Beach to retain the money Venture paid in rent during this period in addition to receiving the . . . purchase price." *Id.*

Michael–Paul tries to turn our holding in *Venture Stores* on its head, asserting that since the trial court here found that SD Investments was entitled to a credit for the rent it paid after the date on which the purchase under the option should have closed, it is inequitable for it not to receive interest on the purchase price from the date. As Pacific Beach's argument did in *Venture Stores,* Michael–Paul's argument ignores the realities of the situation. *Id.* As in *Venture Stores,* the trial court found that SD Investments had the right to exercise the option contained in the lease. *Id.* Had Michael–Paul recognized this right, SD Investments would have owned the property without payment of any rent after the closing date. Likewise, Michael–Paul would have had the purchase money, which it could have invested and presumably have earned a return on that investment. But Michael–Paul rejected the attempt to exercise the option, resulting in this litigation. And during the course of the litigation, Michael–Paul accepted the

rent payments and had the use of that money, including any investment income it received therefrom. Under these circumstances, it cannot be said that the trial court erred in failing to award Michael–Paul interest on the purchase price from the date the closing would have occurred had it not rejected exercise of the option.

Moreover, as noted *supra*, an issue that is not raised in the trial court is not preserved for appellate review. *Scism*, 844 S.W.2d at 507. No where in Michael–Paul's petition, its answer to SD Investments' petition, its post-trial motion, or in the transcript is there any mention of an award of interest on the purchase price from the date on which the option should have closed. Accordingly, we decline Michael–Paul's invitation to convict the trial court of error for failing to award interest on the purchase price where it was never asked to do so. *McMahan*, 980 S.W.2d at 126. Point denied.

 In its final point on appeal, Michael–Paul contends the trial court erred in finding that the purchase price under the option was $275,000. It argues that the trial court disregarded the unambiguous purchase price specified in the lease.

Section 9 of the original lease provides, in pertinent part:

Tenant shall have the option during the term of this Lease Agreement to purchase the Property from Landlord, ... for the sum of:

a. Two Hundred Seventy Five Thousand Dollars and Zero Cents ($275,000.00); plus

b. An additional sum equal to the amount of all monies paid or expended by Landlord or for which Landlord is obligated for:

i. Improvements to the Property from and after April 1, 1999; and

ii. Improvements to any other properties upon Block 13, Goodrich Addition, Jackson County, Missouri, according to the recorded plat thereof.

The provision calling for an additional sum equal to the cost for improvements made after April 1, 1999, relates back to Section 3 of the original lease, which required Landlord to make numerous specified "Leasehold Improvements" to the property *prior to April 1, 1999*. The cost of these leasehold improvements was not to exceed $70,000.

Michael–Paul's argument on appeal is essentially that the trial court should have believed its witness, Verlin Boes. Mr. Boes testified that Michael–Paul paid somewhere between $94,000 and $100,000 for improvements to the premises. But Mr. Garcia, the other member of Michael–Paul at the time, testified that the improvements were "right around $70,000." Mr. Sander also testified that the improvements cost approximately $70,000. There was no evidence of any other improvements.

 The simple answer to Michael–Paul's contention is, of course, that the trial court was not required to believe Mr. Boes testimony. In this court-tried case, the credibility of witnesses was a matter for the trial court, which was free to believe none, part or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). On appeal, we defer "to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984). The trial court expressly recognized the conflict in the evidence regarding the cost of improvements and that Michael–Paul presented no documentary evidence to support Mr. Boes testimony regarding the cost, even though he claimed to have re-

ceipts readily available. It then found that no improvements were made in excess of $70,000, either before or after April 1, 1999, and, therefore, determined the purchase price to be $275,000. The trial court's decision is amply supported by the record and is not against the weight of the evidence. Point denied.

The judgment of the trial court is affirmed.

All concur.