**Brianne HAMPTON, Respondent,**

v.

**Barbara STEPHENS, Appellant.**

**No. WD 35213.**

Missouri Court of Appeals,
Western District.

March 12, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 30, 1985.

Application to Transfer Denied
June 25, 1985.

from Use In Pornography: Toward Constitutional and Enforceable Legislation," 12 U.Mich. J.L.Ref. 295, 321–23, 334 (1979).

Edward W. Mullen, Deacy and Deacy, Kansas City, for appellant.

Edward J. Murphy, Butler, for respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

CLARK, Judge.

This is an action brought by respondent, Brianne Hampton, against appellant, Barbara Stephens, for alleged conversion of a sum of cash. After a bench trial, the court awarded judgment to Hampton for $51,000 actual damages and $10,000 punitive damages and Stephens appeals.[1]

In the point dispositive of the appeal, Stephens contends respondent made no case for conversion, the only legal theory advanced, because, at the time of the alleged taking, respondent had no right to and was not the owner of the funds in question. Appellant's point is well taken. The judgment is erroneous as a matter of law and must be reversed.

At the times relevant to this case, Hampton was the circuit clerk of Cass County and Stephens was chief clerk of the associate circuit court. For a number of years, including a period when Hampton was clerk of the former magistrate court, it had been the practice of the court clerks in Cass County to use funds deposited with the court to cash personal checks and make loans. Deposits to the court's account were irregularly made and personal checks were often held at the request of the maker because of insufficient funds. In some instances, court funds were loaned on the basis of I.O.U.'s. Some of the details describing these practices in Cass County appear in *State v. Hampton*, 653 S.W.2d 191 (Mo. banc 1983).

The use of court funds for the personal benefit of court employees and others was prevalent while Hampton was clerk and was continued when Stephens succeeded her at the time Hampton was elected circuit clerk. Hampton frequently used the service to cash her own checks and she was aware those checks often were not presented to the bank for payment. On at least one occasion Hampton's check would not clear and was later redeemed by her for cash.

1. A second defendant was named in the suit, but judgment was in her favor. That result was not appealed. The claim there asserted is immaterial to the issues on this appeal.

In the spring of 1981, there was general knowledge among persons in the Cass County Courthouse that audits were to be made of county offices. Hampton was aware that Stephens was holding checks for which Hampton had received cash, one for $500.00 dated December, 1980 and another for $190.00, and that neither had been presented for payment at Hampton's bank. On August 21, 1981, Hampton obtained $300.00 from Stephens for another check, this after the audit of Stephens' office had already commenced.

Several days later, Hampton discussed with Stephens the amount of Hampton's checks which were being held, then to the total amount of approximately $1000.00. On August 24 or 25, 1981, Hampton placed $1000.00 in currency in an envelope on which Hampton wrote the words "Associate Court". She took the envelope to Stephens' office and told Stephens, "Barbara this thousand dollars will replace my checks." At that time, Stephens had been called to the courtroom and the envelope with the currency was left on Stephens' desk. Unknown to Stephens, while she was in the courtroom, the auditors took the cash box used for court funds, but the money in the envelope remained on Stephens' desk. Thereafter, Stephens and the deputy clerks were suspended from their duties and Stephens went home. When she left, she took with her the money in the envelope and the checks written by Hampton and others.

It was undisputed that Stephens kept the cash although she knew the purpose for the payment was to satisfy Hampton's obligation on the checks paid out of court funds. Stephens did, however, describe the transaction in a statement to an investigator for the prosecutor's office and she gave the investigator a number of undeposited checks made out to the court, including those written by Hampton described above.

In this action, Hampton sued Stephens for the conversion of the one thousand dollars in the envelope and for the damages which allegedly resulted therefrom in a subsequent criminal prosecution brought against Hampton. The verdict sustained Hampton's claims. On this appeal Stephens asserts that the judgment should be reversed because the facts alleged and proved by the evidence most favorable to Hampton make no cause of action in conversion. This, she says, must follow because, at the time Stephens appropriated the money by removing it from the office of the associate court, Hampton had no ownership interest in and no right to possession of the currency.

■ To recover for a conversion, a plaintiff must show that at the time of the alleged conversion, he was the owner of or had the right to possession of the money or property converted. *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83 (Mo.App.1976). Here, Hampton admittedly was indebted to the circuit court and, through it to the state, on account of court funds advanced for Hampton's undeposited checks. The envelope with the currency was delivered to Stephens as the agent of the court. As Hampton herself testified she gave the envelope to Stephens only because Stephens "was the associate circuit clerk and the official person to handle the money for the court." After meeting her obligation by payment to Stephens as clerk, Hampton was entitled to the return of her undeposited checks but she had no right to a return of the money. It was the court's money. When Stephens appropriated the funds by taking them home, her offense was against the state, not against Hampton.

■ The principal underlying this analysis turns in general terms on the relation of agency. This circumstance, where conversion is the act of an agent, is discussed in the early case of *Cooper v. Commonwealth Trust Co.*, 142 Mo.App. 610, 122 S.W. 791 (1909). There the question was whether a defaulted bank, Salmon and Salmon who had been entrusted with mortgage loan documents and the loan proceeds, was the agent of the borrower, Cooper, or the lender. Because the facts showed Salmon to have been selected as agent of the lending bank, the opinion held Cooper to have no cause of action for mon-

ey had and received based on conversion committed by Salmon. When Cooper delivered his note to Salmon, it was effectively delivered to Salmon's principal and Cooper lost his right of ownership and possession. Similarly, when Hampton gave the money here to Stephens, it was constructively received by the state to whom it was owed.

Hampton seeks to meet this obstacle to her theory of the case by arguing that because the taking of the money by Stephens was unauthorized and not within the scope of an official act, it necessarily follows that it was Hampton's money which was taken. This approach ignores the evidence in the case. Hampton has never claimed that Stephens was her agent or that the money was given to Stephens except in her capacity as clerk of the court. Indeed, Hampton herself testified that she paid the money to Stephens as the official who handled the funds of the court. Once Hampton had discharged her debt by payment to the court clerk, she was thereafter without right to or interest in the money. The misappropriation of the currency by Stephens did not revive Hampton's debt on the checks and, in like manner, gave no rise to a claim by Hampton against Stephens for conversion.

The judgment is reversed.

DIXON, J., concurs.

KENNEDY, P.J., dissents in separate opinion.

KENNEDY, Presiding Judge, dissenting.

I respectfully dissent.

It seems to me that the majority opinion reaches a bad result. The opinion says that the court,[1] defendant's principal, owned the money after plaintiff handed it to defendant, and not the plaintiff, and that plaintiff therefore had no cause of action against defendant when she diverted the money to her own purposes.

The following imaginary situation would be an exact parallel to the present case:

I take $1,000 in cash into the bank and hand it to the teller, with instructions to apply it on and pay off my promissory note owing to the bank. I leave the bank without the note or a receipt, directing the teller to mail them to me. The teller, without giving credit on my promissory note and without making any other record of its receipt, places the cash in her purse. When she leaves the bank that evening she never returns to work. My $1,000 she uses for her own purposes. The bank demands payment of my promissory note. I refuse to pay, pleading payment. My defense of payment is ultimately established and I am vindicated, but only after lengthy and expensive litigation and after damage to my credit and reputation.

According to the majority opinion, I would have no cause of action against the defalcating bank teller. The injustice of this result will be obvious to anyone.

Defendant's *agency* does not enter into this case at all.[2] She was a person—regardless whose agent she was, if anyone's—who herself, as her own agent, took plaintiff's money to be applied to a particular purpose; who assumed a duty to plaintiff to apply the money in accordance with plaintiff's instructions; and who wrongfully and intentionally diverted the money to her own personal use, as a direct consequence of which the plaintiff suffered damage. This set of facts falls squarely and neatly into that principle recognized in many Missouri cases, that *where the plaintiff delivers funds to the defendant for a*

---

1. For the sake of simplicity I will refer to the Associate Circuit Court as "the court" and will treat it as a legal entity.

2. If this were a contest between the *court* and the *plaintiff,* and the issue was whether the checks had been paid, then the fact that defendant was the court's agent would probably be determinative. Payment to defendant, as between plaintiff and the court, would be payment to the court. That would be analogous to the situation in the case cited in the majority opinion, *Cooper v. Commonwealth Trust Co.,* 142 Mo.App. 610, 122 S.W. 791 (1909). But this case is not between the court and the plaintiff; it is between the plaintiff and the person who misappropriated the money.

specific purpose and the defendant diverts them to another and different purpose of the defendant, the defendant is liable to the plaintiff for conversion. *Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 816 (Mo.App.1982); *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. banc 1981); *Scott v. Twin City State Bank*, 537 S.W.2d 641, 645 (Mo.App.1976); *Franta v. Hodge*, 302 S.W.2d 291 (Mo.App.1957).

Where this rule has been applied, it has been applied without any technical analysis of whether the diverted funds were the property of plaintiff at the time of the diversion. Judge Dixon calls the rule which allows recovery in conversion a "narrow exception" to the traditional trover and conversion analysis, *Knight v. M.H. Siegfried Real Estate, Inc., supra*, 647 S.W.2d at 816. It probably should not be called "conversion" at all; it is a different tort. This is one of those cases where a label obfuscates the real elements of the case.

Under the "whose property was it?" analysis, the plaintiff would have lost in *Young v. Mercantile Trust Company National Association*, 552 S.W.2d 247 (Mo. App.1977), and the same case on a second appeal at 598 S.W.2d 482 (Mo.App.1980). There the bank had wrongfully charged plaintiff's savings account, as a result of which defendant suffered certain consequential damages. The bank was held liable in *conversion*. Of course the bank was a debtor to plaintiff for the amount in her account, and plaintiff was a creditor of the bank. The bank did not convert any property belonging to plaintiff. It simply denied owing plaintiff as much as it actually did owe to her. And nonetheless the bank was held to be liable to the plaintiff in the tort of conversion.

I have not overlooked the fact that the majority opinion literally says that plaintiff has no cause of action for *conversion*, leaving open the possibility that on the evidence she had a cause of action on some other theory. Nobody suggests another theory, however—neither plaintiff, nor defendant, nor court. If plaintiff has pleaded and proved some unnamed claim for relief under this evidence, she should not be turned out because in her petition she has used the word "converted" to describe what the defendant did with the money. The outcome of a case should not hang on the accidental use of the word "converted" instead of some such word as "misappropriated" or "diverted".

I would affirm.