I.R. KIRK FARMS, INC., Appellant,

v.

W.L. POINTER, et al., Respondents.

No. WD 49973.

Missouri Court of Appeals,
Western District.

April 18, 1995.

**184**

Price A. Sloan, Terrance M. Summers, Kathryn B. Bussing, Blackwell Sanders Matheny Weary & Lombardi, L.C., Kansas City, for appellant.

A. Howard Chamberlin, Sherry DeJanes, L. Michaelle Tobin, Kansas City, for respondents.

Before KENNEDY, P.J., and LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

Kirk Farms (Kirk) appeals trial court's grant of summary judgment in favor of the defendants, Pointer, et al., (Investors) in a breach of contract action.

The facts of the case are as follows:

Kirk is a small, closely held corporation owned by the Kirk family. In March of 1980, Kirk executed a promissory note to Equita-

ble Life Assurance Society in the amount of $700,000. Kirk secured the loan with property (farm) located in Platte County, pursuant to a deed of trust. Kirk both occupied and worked the farm, which had been in the Kirk family for some time.

In early 1988, Kirk defaulted on the promissory note. One of the defendants, W.L. Pointer (Investor), approached Kirk with a proposal for an agreement which would eventually allow Kirk to repurchase the farm from Investors. Under the terms of the repurchase agreement which Kirk and Equitable and Investors executed, encompassed a series of agreements in February, 1988 whereby: (1) Kirk would transfer the farm to Equitable in lieu of subjecting it to foreclosure proceedings; (2) Equitable would transfer the Farm to Investors in return for a promissory note signed by Investors; and (3) Investors would lease the farm back to Kirk for two years.

Included in this agreement were the following documents: (1) property transfer agreement between the three parties; (2) settlement agreement between Kirk and Equitable; (3) lease between Kirk and Investors; (4) option agreement and right of first refusal; and (5) a memorandum of the option agreement and right of first refusal.

Of particular concern in this case is the option agreement. The option provided Kirk the opportunity to repurchase the farm from Investors for a purchase price of ten thousand dollars. It contained language which would make the offer in the option irrevocable. "In consideration of $50.00 from buyer to seller ... will cement the option." At the time that the option was executed, it is uncontested that the $50.00 consideration had not been paid, nor was payment requested by Investors.

The existence of the option agreement was recorded in a memorandum between seller and buyer. This memorandum provided that "in consideration of the premises, the agreements contained in the option agreement and herein, the payment by Buyer to Seller of FIFTY DOLLARS ($50.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto...." At the time the

memorandum was recorded, the $50.00 had not been paid. Kirk later, in the fall of 1988, tried to pay the $50.00 to Investors, but Investors refused to accept it, stating that the payment was not necessary.

In February of 1989, Kirk decided to exercise the option and tendered a check for $10,000 to Investors. Included was a letter of intent pursuant to the option directing Investors to convey title of the farm to Kirk. Investors refused to accept the tendered amount or to execute the deed to the farm, stating the option was unenforceable because the $50.00 had not been paid, though they had refused to accept payment of the $50.00 in the fall of 1988.

Kirk sued Investors seeking specific performance of the option. Investors filed a motion for summary judgment on the grounds that the option agreement was unenforceable as a matter of law because it was not supported by valid consideration (the non payment of the $50). Kirk opposed the motion, but did not also move for summary judgment. The trial court granted Investors' motion for summary judgment.

When considering an appeal from summary judgment, this court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. 1993). If the trial court, in order to grant summary judgment, must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment, summary judgment is improper. *Id.*

## I.

Kirk first claims that even if the $50.00 consideration is ignored, the offer is a regular contract offer; and, though not irrevocable, Kirk properly accepted the offer before Investors communicated their intent to revoke the offer.

The trial court, in granting summary judgment, held that the lack of consideration (payment of $50.00) precluded Kirk from exercising the option. This court disagrees.

■ Contract law clearly holds that consideration is only necessary in an option situation to make the offer (option) **irrevocable.** However, even if consideration is not tendered, an option, though not irrevocable, is a continuing offer to sell. *Henson v. Wagner*, 642 S.W.2d 357, 363 (Mo.App.1982).

■ An option is a contract collateral to an outstanding offer to sell property and is subject to the same requirements as other contracts including offer and acceptance. Accordingly, an offer to enter into an option will remain open until the option offer has been accepted, withdrawn, or a reasonable time has passed. *Ragan v. Schreffler*, 306 S.W.2d 494, 498–99 (Mo.1957).

■ The offeror is free to revoke his or her offer at any time prior to acceptance. *Hendricks v. Behee*, 786 S.W.2d 610 (Mo. App.1990). However, the offeror must communicate the revocation before the offeree has accepted. *Id.* Thus, in the case at bar, the offer remained open as long as Investors failed to give Kirk notice of its intent to revoke the offer. Investors did not do so until **after** Kirk tendered the $10,000 check for the repurchase of the farm. It is this court's opinion that the option offer was accepted when Kirk tendered the $10,000 in February of 1989, thus the option is a binding contract.

Granted, Missouri courts have not yet ruled on this exact factual situation; however, several other states have. In Arkansas, for example, the Supreme Court, in *Kelley v. Coldren*, 226 Ark. 266, 290 S.W.2d 424 (1956), upheld an option contract. In *Kelley*, the court held $1 nominal consideration insufficient to make the option offer irrevocable, but instead held that the purchaser's tender of $500 prior to the seller's withdrawal was a valid acceptance of the option. *Id.* Accordingly, the buyer properly exercised the option, thereby binding the seller to the deal. *Id.*

The *Kelley* decision makes logical sense and is extremely factually similar to the case at bar.

In opposition, Investors claim Kirk's acceptance of the option in February of 1989 was legally ineffective because the offer had

lapsed shortly after February 12, 1988. This court disagrees. In the contract and option documents, the offer is made to Kirk to repurchase the farm *at any time prior to February of 1990*. This is even if the option is unsupported by consideration, as it ceases to be irrevocable, but becomes a continuing offer to sell. *Gillen v. Bayfield,* 329 Mo. 681, 46 S.W.2d 571 (1931).

■ An option requiring acceptance within a specified time is a continuing offer to sell within the stipulated time. *Mohawk Real Estate Sales, Inc. v. Crecelius,* 424 S.W.2d 86, 90 (Mo.App.1968). An offer which specifies a time for its duration terminates by lapse of the time specified in the offer, and the acceptance must take place within that time period. *Sharp Brothers Contracting Co. v. Commercial Restoration, Inc.,* 334 S.W.2d 248, 252 (Mo.App.1960).

■ This court finds that under the terms of the option, Investors offer to sell extended for two years commencing on February 12th, 1988, and ending on February 17, 1990 and, "if not exercised within said two (2) year period, the option shall lapse, expire and become null and void." Under the clear, express contract language, Investors are erroneous in declaring that the offer had lapsed prior to February of 1989.

■ It is not contested that Investors never told Kirk that the option was unenforceable or that its continuing offer was withdrawn until after Kirk attempted to exercise the option in February of 1989 by tendering the $10,000. This court finds it was completely reasonable for Kirk to believe that the offer would not lapse until February of 1990 because of the express contract language and having never been informed otherwise by Investors.

This court holds that Kirk presented sufficient evidence to create a genuine factual issue on whether its actions on February 11, 1989, constituted acceptance of the continuing offer and resulted in formation of a binding contract with Investors to convey the property.

## II.

There exists another red flag in Investors' actions which merits discussion by this court, and ultimately, a granting of Kirk's point on this issue as well.

Kirk points out on appeal that the doctrine of equitable estoppel is appropriate in this case because Investors are asserting that the option agreement is unenforceable for lack of $50.00 consideration, however, Kirk attempted to tender the $50.00 to investors in 1988, and they refused to accept it, saying it was not necessary.

This court finds this point, especially when combined with point I, *supra,* meritorious.

It is uncontroverted that the $50.00 was offered to Investors by Kirk, and then rejected. For the purpose of reviewing the defendant's summary judgment motion, this fact would be taken as true, even if it had not been agreed upon. This evidence demonstrates that Kirk reasonably relied upon the words and conduct of Investors, who assured Kirk that such payment was unnecessary. It was not until Kirk attempted to exercise the option that Investors informed Kirk that the option was unenforceable because Kirk never paid the $50.00 option fee.

■ The doctrine of equitable estoppel seeks to foreclose one from denying his own expressed or implied admissions which have in good faith and in pursuance of its purpose, been accepted and relied upon by another. *Lake St. Louis Community Asso. v. Ravenwood Properties Ltd.,* 746 S.W.2d 642, 646 (Mo.App.1988).

■ Estoppel requires: (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act. *Brown v. State Farm Mut. Auto. Ins. Co.,* 776 S.W.2d 384, 386 (Mo.1989).

The purpose behind estoppel is that equity must intervene to prevent gross injustice. *Chicago Title Ins. Co. v. First Missouri Bank,* 622 S.W.2d 706, 708 (Mo.App.1981).

The record affords this court sufficient factual background to base application of equitable estoppel. First, Investors never asked Kirk for the $50.00 option consideration fee at the time the option was executed on February 12, 1988. Three months later, even though the $50.00 had not been paid, Investors and Kirk recorded the memorandum of option in the Platte County Recorder of Deeds office. In this memorandum, Investors also acknowledged the receipt and sufficiency of consideration from Kirk. Additionally, and most importantly, it is uncontroverted that Kirk offered to pay the $50 to Investors in the fall of 1988, and was told by Investors' agent, Pointer, that the $50.00 payment was not necessary.

The trial court could easily have concluded that Investors never intended the $50.00 payment as the sole basis of its bargain for the option, and that Kirk reasonably relied upon Investors' words and actions to conclude that the $50.00 payment was unnecessary.

To this court, Investors' contentions and actions in this transaction certainly smack of impropriety ... perhaps deciding sometime during the option period that it could get a better price for the farm from another buyer, and that the best way to get out of the deal was to seek legal refuge being the formality of the unpaid $50.00. In any event, the trial court failed to resolve any of the factual issues supporting Kirk's allegations of inequitable conduct of Investors or to consider any evidence of Investors' bad faith in dealing with Kirk.

This court holds that Kirk, as required, properly showed there was a genuine dispute as to the facts underlying the presence or absence of sufficient consideration to support the option here. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

The trial court erred in ordering summary judgment without consideration of the above factual disputes.

The judgment is reversed, and the cause remanded for trial.

All concur.