In re the ESTATE OF Bennie James WILLIAMS, II, Lisa Williams–Payton, Appellant–Respondent,

v.

Alyce M. WILLIAMS, Personal Representative of the estate of Bennie James Williams, II, et al., Respondents–Appellants.

No. SC 81769.

Supreme Court of Missouri, En Banc.

Feb. 22, 2000.

Rehearing Denied March 21, 2000.

Max E. Mitchell, Buckley & Mitchell, Sedalia, for Appellant–Respondent.

Thad R. Mulholland, Matthew B. Woods, Columbia, James T. Bellamy, Administrator ad litem, Marshall, Clarence G. Williams, Sedalia, Martin J. Williams, Glen Burnie, MD, for Respondents–Appellants.

JOHN C. HOLSTEIN, Judge.

This appeal rises from a discovery of assets proceeding filed in the probate division of the circuit court of Pettis County. That court granted summary judgment giving ownership of the assets in question to the estate and dismissed an additional claim for punitive damages. Both parties appealed. After opinion by the court of appeals, this Court granted transfer. *Mo. Const. art V, sec. 10.*

### Facts

Bennie James Williams, II (Decedent) was the beneficiary of an annuity that provided a monthly payment of three thousand four hundred fifty-two dollars for Decedent's life or for twenty years, whichever was longer. The first payment was scheduled to be paid to Decedent on July 15, 1993. However, Decedent died intestate on July 7, 1993. On July 6, 1994, the probate division of the Pettis County circuit court appointed Decedent's mother, Alyce M. Williams (Mother), as the personal representative of Decedent's estate. On August 9, 1994, Mother wrote the issuer of the annuity, informing them that she was the personal representative of Decedent's estate and requested that the annuity payments be made to her personally. The issuer of the annuity began making the payments to Mother in her capacity as the personal representative of the estate. On August 21, 1995, Mother informed the issuer of the annuity that the checks should be made to her personally and not in her capacity as the personal representative of the estate. Subsequent annuity payments were made to Mother in her personal capacity.

On February 18, 1997, Decedent's sister, Lisa Williams–Payton (Sister), filed a peti-

tion for discovery of assets pursuant to sec. 473.340, RSMo 1994.[1] Sister alleged that Mother's designation of herself as the payee of Decedent's annuity was improper and that Mother had also improperly withheld most of the previous payments as her own. Sister alleged that all of the annuity payments belonged to the estate. Included in her petition for the discovery of assets of the estate, Sister alleged that Mother acted with "evil motive or reckless indifference" to the rights of the other beneficiaries of Decedent's estate and sought punitive damages. Sister also filed a petition for the removal of Mother as the personal representative of the estate. The docket sheet shows that on April 14, 1997, the trial court continued the motion for permanent removal of Mother as personal representative, but withdrew the letters of administration it had issued to Mother and appointed the public administrator as administrator ad litem pending the outcome of the discovery of assets proceeding.

Sister moved for summary judgment on the issue of the ownership of the annuity payments. The trial court granted summary judgment, finding that each annuity payment after Decedent's death, plus interest, belonged to the estate and not to Mother. Sister then attempted to proceed on her claim for punitive damages, but Mother moved to dismiss Sister's claim for punitive damages. The trial court dismissed the claim for punitive damages, finding that a discovery of assets action was not the proper vehicle for claims regarding a breach of fiduciary duty. Mother appeals the summary judgment, and Sister appeals the dismissal of her punitive damages claim.

## I.

■ Mother argues that the trial court erred in granting summary judgment in that the court lacked subject matter jurisdiction because the administrator ad litem was never made a party to the case. Sec-

tion 473.340.4 states that in a discovery of assets proceeding:

> If the court finds that a complete determination of the issues cannot be had without the presence of other parties, the court may order them to be brought in by an amended or supplemental petition. The court shall order the joinder of the personal representative of the estate if he is not named as a party.

Sister's original petition in this proceeding named Mother as a party in her capacity as personal representative and individually. As noted above, on April 14, 1997, the court withdrew the letters of administration that made Mother the personal representative and appointed an administrator ad litem. When appointed by the court to administer an estate, the public administrator "shall have the same powers as are conferred upon, and be subject to the same duties, penalties, provisions and proceedings as are enjoined upon or authorized against personal representatives, guardians and conservators." *Sec. 473.750.* However, the administrator ad litem in the present case never filed pleadings and does not appear to have been present at any stage of the proceedings.

Relying on *In re Estate of Pilla,* 735 S.W.2d 103 (Mo.App.1987), Mother argues that under sec. 473.340.4 the administrator ad litem was an indispensable party, and the failure to join her deprived the court of subject matter jurisdiction. Sister counters with *Simpson v. Shelker,* 747 S.W.2d 259 (Mo.App.1988). *Simpson* reasoned that the purpose of sec. 473.340.4 was to protect the estate. *Id.* at 260. Therefore, that court held that if "no more advantageous outcome was possible" for the estate, the personal representative was not an indispensable party. *Id.* On the issue of ownership of the annuity payments, Sister argues correctly that no more advantageous outcome was possible for the estate. Therefore, she argues that *Simpson* supports a finding that the court retained subject matter jurisdiction. We need not

---

1. All references to statutes are to RSMo 1994 unless specified otherwise.

decide here whether *Simpson* is inconsistent with the plain text of the statute and should be overruled, because here the public administrator was properly substituted for the personal representative of the estate.

In the present case, the court simultaneously withdrew Mother's letters of administration and appointed the public administrator as administrator ad litem. An administrator ad litem is "a special administrator appointed by court to supply a necessary party to an action in which deceased or his estate is interested." *Black's Law Dictionary*, 47 (6th ed.1990). Therefore, by definition, the appointment to administrator ad litem substituted the public administrator into the place of Mother as personal representative. The administrator ad litem's apparent failure to appear or plead does not negate the fact that the court appointed her administrator ad litem. Thus, from the time of her appointment, the administrator ad litem was as effectively a party as if she had been named a defendant in the original pleading.[2]

The court retained subject matter jurisdiction over the discovery of assets proceeding by substituting the public administrator for Mother. Therefore, the court had jurisdiction to enter its summary judgment. The summary judgment is affirmed.

## II.

Sister appeals the court's dismissal of her claim for punitive damages. The court determined that the punitive damages claim arose from an alleged breach of fiduciary duties by Mother. Relying on *State ex rel. Abele v. Harman*, 962 S.W.2d 945 (Mo.App.1998), the trial court held that a discovery of assets proceeding was not the proper vehicle for breach of fiduciary duties claims. Finding itself without subject matter jurisdiction, the court dismissed the claim for punitive damages.

## A.

 *Abele* is inapposite. In that case, a petition for discovery of assets against the conservator of a minor's estate did not assert that the conservator claimed an interest in any estate property. Neither did the petition for discovery of assets claim that the conservator held any property in a constructive trust for the estate. Essentially, the claim was that the conservator had breached a fiduciary duty by failing to more zealously pursue settlement of certain tort claims. *Abele*, 962 S.W.2d at 948. Because the question of ownership of estate property was not at issue, the court held the discovery of assets proceeding was not the proper procedural vehicle. By contrast, in this case, the petition to discover assets clearly asserts a claim to ownership of specific assets belonging to the estate which were being withheld by Mother "with an evil motive or reckless indifference to the rights of heirs/beneficiaries" of the estate. Like all cases, *Abele* cannot be read more broadly than its facts permit.

 A discovery of assets proceeding is an action to determine a decedent estate's title, right to possession, or both of specific property. *Sec. 473.340.1*. The probate division of the circuit court has original and exclusive jurisdiction over a proceeding to discover assets pursuant to sec. 473.340. *Brazeal v. Redburn*, 638 S.W.2d 771, 772 (Mo.App.1982); *Caldwell v. First Nat'l Bank of Wellston*, 283 S.W.2d 921, 923 (Mo.App.1955). Thus, a common law action alleging the conversion of property belonging to a decedent's estate and seeking a common law claim for punitive damages associated with that conversion may be pursued in a discovery of assets proceeding in the probate division of the circuit court.

---

2. The point relied on does not allege that the administrator ad litem was not served with appropriate notices and pleadings. Perhaps on remand the record may be made more clear as to whether appropriate service of notice was given or waived by the administrator ad litem. At this juncture, the Court does not address that question.

■ Mother also makes the argument that Sister has no standing to assert a claim for conversion of assets because Sister was not the owner of the asset allegedly appropriated. She cites authority for the proposition that only one who is or claims to be an owner of property and entitled to an immediate right to possession may bring a conversion action. *See Hampton v. Stephens,* 691 S.W.2d 287, 289 (Mo.App.1985). However, sec. 473.340.1 plainly extends standing to "[a]ny personal representative, administrator, creditor, beneficiary or other person who claims an interest in property which is claimed to be an asset of an estate." Sister, as a beneficiary of the estate, has standing to assert a claim that Mother wrongfully converted and appropriated as her own property belonging to the estate and that the estate is entitled to the ownership and immediate possession of the property in question. While perhaps not a model, Sister's discovery of assets petition is sufficient to state a claim for conversion of the annuity and its proceeds.

### B.

■ The question remaining is whether the legislature intended to eliminate the common law claim for punitive damages for the wrongful conversion of estate property. In relevant part, sec. 473.340.3 provides:

> In addition to a judgment for title and possession, or either, or for the value [of property adversely withheld from an estate], the court may enter a judgment for all losses, expenses and ***damages sustained,*** if any, but not including attorney fees, if it finds that the property was wrongfully detained, transferred or otherwise disposed of. (emphasis added).

3. To accept Mother's argument results in a redundancy. Section 473.340 allows for the recovery of "all losses, expenses and damages sustained." Accepting Mother's argument, if a claimant obtains judgment for "all losses" and "expenses," there can be no judgment for any additional actual damages sustained.

"Sustained" is the past tense of the verb "sustain." "Sustain" has several, varying definitions, including: to uphold by aiding or backing up; to provide for the support or maintenance of; to maintain or prolong; to bear up from below; to prevent from sinking; to endure; to suffer, receive, or undergo; to support as true, legal, or just; to support by adequate proof; to act the part of. *Webster's Third New International Dictionary* 2304 (1981). Applying these definitions to determine the plain or ordinary meaning of the phrase "damages sustained," as used in the context of sec. 473.340, yields at least two reasonable meanings: damages suffered or received and damages supported by adequate proof.

■ Mother argues that "damages sustained" necessarily means *actual* damages suffered or received *by the estate.* For her argument to succeed, however, one must add the italicized words to the statute. Based on her reading of the statute, Mother argues that because punitive damages would not compensate the estate for injuries or losses actually suffered by the estate they are not "damages sustained" and, therefore, cannot be awarded by the probate division under sec. 473.340.3.[3]

However, the other definition supported by the plain and ordinary meaning of "damages sustained" in sec. 473.340.3 is damages supported by adequate proof. A review of the applicable canons of statutory construction demonstrates that this second definition applies here.

■ If a statute is ambiguous, it is to be construed in a manner consistent with the legislative intent, giving meaning to the words used in the broad context of the legislature's purpose in enacting the law. *Sullivan v. Carlisle,* 851 S.W.2d 510, 512 (Mo. banc 1993). The self-evident purpose

Mother's reading renders the term "damages sustained" a meaningless repetition. Every word of the statute should be given meaning and not be considered a needless repetition. *Lora v. Director of Revenue,* 618 S.W.2d 630, 633 (Mo. banc 1981).

of sec. 473.340 is to channel all claims to specific property in which an estate may have an interest into the probate division of the circuit court, including common law claims for conversion. Nothing in the text of the statute expresses any design to eliminate any common law remedy associated with conversion of property belonging to a decedent. To construe the statute as intended to eliminate any aspect of a common law claim for conversion of assets of a decedent's estate is not consistent with the statutory purpose.

More importantly, no statute should be construed to alter the common law further than the words import. *Shaw v. Merchants Nat'l Bank,* 101 U.S. 557, 565, 25 L.Ed. 892 (1879). Where doubt exists about the meaning or intent of words in a statute, the words should be given the meaning which makes the least, rather than the most, change in the common law. *Sutherland Stat Construction,* sec. 61.01 (5th ed.1992); *see also Wince v. McGarrah,* 972 S.W.2d 641, 643 (Mo.App. 1998); *Huff v. Union Elec. Co.,* 598 S.W.2d 503, 511 (Mo.App.1980). Under this well recognized rule of statutory construction, an ambiguous word does not form the basis for eliminating a common law punitive damages claim.

In cases where a statute creates a cause of action unknown to the common law, punitive damages will not be allowed unless specified in the statute. By contrast, the conversion claim asserted here is not rooted in a cause of action created by statute, but in one existing at common law. Thus, the rule of strict construction against punitive damages in purely statutory actions is inapposite.

When the legislature wishes to substitute a statutory limitation on punitive or penal damages for what would otherwise be a common law claim, it makes specific provision for such limitation. The general assembly by the words it uses is perfectly capable of preempting claims, limiting punitive damages or granting immunity.

There is no need for courts to infer a limitation, preemption or immunity where the legislature did not say so. "To read words or concepts into our statutes that the general assembly did not write shows disrespect to both the general assembly and for the common law." *Overcast v. Billings Mut. Ins.,* 11 S.W.3d 62, 69–70 (Mo. banc 2000).

### CONCLUSION

The trial court had jurisdiction to enter summary judgment, and it is affirmed. However, applying both the dictionary meaning and standard rules of statutory construction to the words in sec. 473.340, the trial court erred in finding that it had no jurisdiction to award punitive damages in the discovery of assets proceeding. The judgment dismissing Sister's claim for punitive damages is reversed. The case is remanded to the circuit court for further proceedings consistent with this opinion.

All concur.