In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

CLIFTON JAMESON, ) No. ED109161
 )
 Appellant, ) Appeal from the Circuit Court of
 ) St. Louis County
vs. ) 19SL-CC02508
 )
ALEXIS STILL, ) Honorable John N. Borbonus
 )
 Respondent, ) Filed: June 22, 2021

 OPINION

 Appellant Clifton Jameson appeals the summary judgment granted on respondent Alexis

Still’s affirmative defense which alleged that Jameson’s personal injury case arising out of the

parties’ December 31, 2018 motor vehicle accident had been settled. Jameson argues that no

settlement occurred because Still’s insurer MetLife rejected Jameson’s May 20, 2019 settlement

offer with its June 21, 2019 counteroffer such that the May 20 offer was no longer on the table

when MetLife purported to “accept” it on August 15, 2019.

 For her part, Still asserts that because Jameson’s demand was made pursuant to section

408.040 and section 537.058, and that both sections contain language that settlement offers made

pursuant to and for the purpose of those sections are to remain open for at least 90 days,

Jameson’s offer was irrevocable and non-rejectable as a matter of law. 1 Thus, Still argues that

1
 All statutory references are to RSMo 2016 unless otherwise indicated.
MetLife’s counteroffer did not operate as a rejection and that its later “acceptance” within 90

days of Jameson’s May 20 offer was effective to settle the claim. Because we disagree, we

reverse and remand.

 Background

 On New Year’s Eve 2018, Still’s vehicle collided with Jameson’s on Interstate 270 in St.

Louis County. Jameson alleges Still’s negligence caused the crash and the resulting injuries to

his head, collarbone, and left elbow. On May 20, 2019, Jameson’s counsel sent a letter to

MetLife, Still’s auto insurer, titled “Offer to Settle Pursuant to RSMo § 408.040 and RSMo §

537.058.” The letter stated in relevant part:

 “My firm is authorized to offer to settle this matter for the sum of one-hundred
 and fifty thousand ($150,000.00) or all available coverages, whichever is less, for
 a full release of any and all claims against Ms. Still. This offer to settle will
 remain open for ninety (90) days from the date of MetLife Insurance Company’s
 receipt of this offer. Upon MetLife’s acceptance of this offer, Clifton will execute
 the enclosed 537.060 release. The following must occur within ninety (90) days
 from the date MetLife receives this offer letter in order to constitute
 acceptance…”

 On June 21, 2019, MetLife responded with a counteroffer to settle Jameson’s claim for

$24,751. Three days later, Jameson filed his petition for damages against Still which included

his averment that “Plaintiff’s RSMo section 408.040 offer was rejected on June 21, 2019.”

 On August 6, MetLife sent a second letter to Jameson’s counsel stating:

 “As we discussed on Friday, August 2, 2019, I wanted to follow up with you and
 confirm that we are prepared to tender our policy limits of $ 100,000.00 for your
 clients [sic] Bodily Injury Claim.

 Please advise as to the acceptance of this offer, and at that time I will forward the
 remaining required Paper work [sic] that was included in your demand package.”

Jameson did not respond to this offer.

 On August 14, in a third letter, MetLife reiterated its offer of the $100,000 policy limits:

 2
 “I have taken over handling of this case.

 On Aug. 6, 2019 we extended an offer of $100,000 policy limits. I am enclosing
 the executed Insurance Company Affidavit included with your May 20, 2019
 demand letter.

 Please provide payment instructions at your earliest convenience.”

 The next day, August 15, MetLife sent a fourth letter, this time purporting to accept

Jameson’s original May 20 offer:

 “On behalf of Ms. Still we accept your demand to settle set out in your letter of
 May 20, 2019. Please send the Release and we will send the check within 10 days
 as you advised.”

 Jameson’s counsel responded on August 20 to MetLife and Still that Jameson’s May 20

settlement offer was no longer on the table because MetLife’s $24,751 counteroffer in its June 21

letter constituted a rejection of that offer. His counsel added that MetLife had therefore exposed

Still’s personal assets in the event of an excess verdict and that MetLife itself was exposed to

liability for its bad faith refusal to settle after having been given a “reasonable opportunity to

settle” as defined in section 537.058.

 In her answer, Still asserted as an affirmative defense that MetLife’s August 15 letter

constituted an acceptance of Jameson’s May 20 offer such that Jameson’s injury claim was

thereby settled. On September 5, 2019, Still filed her motion to enforce settlement citing the two

statutes - section 408.040 and section 537.058 - in support of her argument. Still argued that

Jameson’s May 20 offer was irrevocable and non-rejectable for 90 days irrespective of any

action taken by the parties including Jameson’s filing suit, in which he averred his offer had been

rejected, and MetLife’s actions consisting of its August 6 counteroffer and its three subsequent

offers made to Jameson before it eventually sent its August 15 letter purporting to “accept”

Jameson’s original May 20 demand. The trial court denied that motion. Still’s petitions for

 3
extraordinary writ relief based on these same arguments filed in this Court and in the Supreme

Court were also denied. Then, on March 25, 2020, Still renewed her arguments in her motion for

summary judgment. This motion the court granted on July 27, 2020. This appeal follows.

 Standard of Review

 This Court’s review of a grant of summary judgment is de novo. Harpagon MO, LLC v.

Bosch, 370 S.W.3d 579, 581 (Mo. banc 2012). We review the record in the light most favorable

to the party against whom judgment was entered. Dahn v. Dahn, 346 S.W.3d 325, 331 (Mo.

App. W.D. 2011). Where the defending party is the movant, it may establish a right to judgment

by showing that there is no genuine dispute as to the existence of each of the facts necessary to

support the movant’s properly-pleaded affirmative defense. ITT Commercial Fin. Corp. v. Mid-

Am. Marine Supply Corp., 854 S.W.2d 371, 381 (Mo. banc 1993). But even if the facts relevant

to the affirmative defense are undisputed, the movant still must establish the right to judgment as

a matter of law. Id.

 Discussion

 Here, the facts relevant to the parties’ settlement communications, which are set forth

above, are undisputed. What remains at issue before us is whether Still is entitled to judgment as

a matter of law. This legal question, which we review de novo, centers on whether section

408.040 or section 537.058 rendered Jameson’s May 20 offer irrevocable and non-rejectable for

90 days and thus unperturbed by MetLife’s June 21 rejection/counteroffer and its three other

offers.

 Our task is rather simple – does the pertinent language from section 408.040.3(4) (“…and

be left open for ninety days”) or section 537.058.2(1) (“…shall remain open for acceptance …

not […] less than ninety days…”) require us to depart from the centuries-old black letter contract

 4
law that holds that MetLife’s June 21 counteroffer was a rejection of the original May 20 offer

such that MetLife’s August 15 “acceptance” was ineffectual to accomplish a settlement since

Jameson's offer was no longer on the table. McLean v. Pastime Gymnasium Ass’n, 64 Mo. App.

55, 56 (1895) (“Where a counter offer is submitted which in any way qualifies the terms of the

offer by new matter, the original offer is thereby rejected, and the party to whom the offer was

made can not afterward bind the proposer by an unconditional acceptance, unless the original

offer is renewed.”)

 We reach our decision to reverse this case based on our interpretation of the legislative

intent of the foregoing language from sections 408.040 and 537.058 upon which Still relies.

First, the plain and ordinary meaning of the language does not manifest a clear legislative intent

that an offer made pursuant to either section is irrevocable and non-rejectable as a matter of law.

Second, we conclude that the legislature intended the foregoing language to be construed in the

limited context of each of these sections’ specific and limited purpose and not as a broad

statutory departure from Contracts 1-0-1.

1. The black-letter common law of contracts vis-a-vis offer, acceptance, counteroffer,

 and rejection.

 Basic contract law governs settlement agreements. Tinucci v. R.V. Evans Co., 989

S.W.2d 181, 184 (Mo. App. E.D. 1998). When an offeror makes an offer, the offeree obtains the

power of acceptance. Boehm v. Reed, 14 S.W.3d 149, 151 (Mo. App. W.D. 2000). The

offeree’s power of acceptance can be terminated a number of ways, including by acceptance,

rejection, revocation, the lapse of time, or by the death or incapacity of either party. Id. A

counteroffer does two things - it operates as a rejection of the original offer and as a new offer.

Tri-Lakes Title & Escrow, LLC v. Morris Grp., Inc., 443 S.W.3d 76, 79 (Mo. App. S.D. 2014).

 5
A party cannot accept an offer after making a counteroffer, as the original offer is deemed

rejected. J.H. v. Brown, 331 S.W.3d 692, 701 (Mo. App. W.D. 2011) (citing Nelson v. Baker,

776 S.W.2d 52, 53 (Mo. App. E.D. 1989); see also Beck v. Shrum, 18 S.W.3d 8, 10 (Mo. App.

E.D. 2000).

 Here, the parties’ settlement communications set forth above demonstrate that until

MetLife sent its August 15 letter purporting to “accept” Jameson’s May 20 offer to settle, the

parties themselves had adhered to the foregoing well-worn contract principles. First, both parties

treated MetLife’s June 21 counteroffer as a rejection. We know this because Jameson filed suit

and alleged in the petition that the settlement offer had been rejected. MetLife, for its part, also

treated its June 21 counteroffer as a rejection. In its next three communications to Jameson, on

August 2, August 6, and August 14, MetLife repeatedly put its own offer to settle for the policy

limits on the table. If Jameson’s May 20 offer was still available for acceptance, as MetLife now

argues, why would MetLife deem it necessary to make fresh new offers, rather than simply

accept Jameson’s? Nevertheless, within one day of its August 14 offer, MetLife apparently

recalibrated its position, which it now asserts here, when it sent its August 15 letter purporting to

“accept” Jameson’s offer.

2. Irrevocable offers.

 There are certain limited circumstances when an offer is deemed to remain open even

when the parties take action that under the ordinary black-letter contract law set forth above

would be considered a rejection or revocation of the offer. Sunray Oil Co. v. Lewis, 434 S.W.2d

777, 781 (Mo. App. W.D. 1968). Such offers are referred to as irrevocable offers, and can be

established in one of two ways, by statute or by contract. ARTHUR L. CORBIN, CORBIN ON

CONTRACTS, § 43 at 71 (1952). To make an offer irrevocable by contract, parties enter into an

 6
option contract. I.R. Kirk Farms, Inc. v. Pointer, 897 S.W.2d 183, 185 (Mo. App. W.D. 1995).

“An option is a contract collateral to an outstanding offer … and is subject to the same

requirements as other contracts including offer and acceptance.” Id. In essence, the offeree pays

the offeror something of value to induce the offeror to give up the well-established common law

right to revoke the offer or to consider the offer rejected by a counteroffer. Hahn v. Earth City

Corp., 625 S.W.2d 640, 642 (Mo. App. E.D. 1981). Here, an option contract was not present.

 The second departure from the common law’s treatment of offers as freely revocable and

rejectable is if a statute mandates it. Corbin, supra. And in our analysis whether section

408.040 and section 537.058 rendered Jameson’s May 20 offer irrevocable and non-rejectable,

we are guided by the following principles. “Statutes are not to be construed as altering the

common law, or as making any innovation therein, further than their words import.” Shaw v.

Merchants' Nat. Bank, 101 U.S. 557, 561 (1879) (recognizing statutory modifications to

common law). “Unless a statute clearly abrogates the common law either expressly or by

necessary implication, the common law rule remains valid.” State ex rel. KCP & L Greater

Missouri Operations Co. v. Cook, 353 S.W.3d 14, 20 (Mo. App. W.D. 2011). “We strictly

construe a statute when existing common law rights are affected, and if a close question exists,

we weigh our decision in favor of retaining the common law.” Id. at 20-21.

3. Offers, such as Jameson’s of May 20, 2019, which reference section 408.040 and

 section 537.058, are not rendered irrevocable and non-rejectable by either of those

 two statutes.

 a. Rules of statutory construction.

 Statutory interpretation is a question of law which we review de novo. Li Lin v. Ellis,

594 S.W.3d 238, 241–42 (Mo. banc. 2020). “The primary rule of statutory construction is to

 7
ascertain the intent of the legislature from the language used, to give effect to that intent if

possible, and to consider words used in the statute in their plain and ordinary meaning.” Howard

v. City of Kan. City, 332 S.W.3d 772, 779 (Mo. banc 2011) (quoting Farmers’ & Laborers’ Co-

op Ins. Ass’n v. Dir. of Revenue, 742 S.W.2d 141, 145 (Mo. banc 1987)). Accordingly, we grant

no deference to the trial court’s determination and we review the statutes independently.

Nicolazzi v. Bone, 589 S.W.3d 638, 640 (Mo. App. E.D. 2019).

 In Emery v. Wal-Mart Stores, Inc., the Supreme Court held:

 “[W]hen statutory language is clear, courts must give effect to the language as
 written. Courts are without authority to read into a statute a legislative intent
 contrary to the intent made evident by the plain language. The court should
 regard the statute as meaning what it says. A court may not add words by
 implication to a statute that is clear and unambiguous.”

976 S.W.2d 439, 449 (Mo. banc 1998).

 “It is an established principle that all statutes are presumed to be enacted by the

legislature with full knowledge of the existing condition of the law and with reference to it.”

Hannibal Tr. Co. v. Elzea, 286 S.W. 371, 378 (1926). A statute’s meaning and effect must be

determined in connection with the common law, the Constitution, and other relevant statutes as

part of “a general and uniform system of jurisprudence.” Id. at 378-79. “Where doubt exists

about the meaning or intent of words in a statute, the words should be given the meaning which

makes the least, rather than the most, change in the common law.” Est. of Williams v. Williams,

12 S.W.3d 302, 307 (Mo. banc 2000).

 b. The plain and ordinary meaning of the words.

 Neither section 408.040 nor section 537.058 uses the words irrevocable or non-rejectable

or their equivalents. While that is not dispositive, it is telling. Had the legislature intended to

 8
mandate that all settlement offers made pursuant section 408.040 and section 537.058 are

irrevocable or non-rejectable for ninety days, it would have used that language.

 Moreover, the legislature in section 408.040 explicitly recognized the rejectability of

offers made pursuant to that section and that a counteroffer operates as such:

 In tort actions, if a claimant has made a demand for payment of a claim or an offer of
 settlement of a claim, to the party, parties or their representatives, and to such party’s
 liability insurer if known to the claimant, and the amount of the judgment or order
 exceeds the demand for payment or offer of settlement, then prejudgment interest shall be
 awarded, calculated from a date ninety days after the demand or offer was received, as
 shown by the certified mail return receipt, or from the date the demand or offer was
 rejected without counter offer, whichever is earlier.

§408.040.3 (emphasis added).

 In sum, under our review of the plain and ordinary words the legislature used, neither

statute either expressly or by necessary implication abrogates the common law. State ex rel.

KCP & L Greater Missouri Operations Co., 353 S.W.3d at 20.

 c. The limited and specific purpose of these two statutes.

 Moreover, the specific, limited, and identifiable purpose of each of these statutes further

demonstrates that the intent of the legislature was not to alter the common law but to simply

accomplish the purpose of each statute.

 i. Section 408.040 – Prejudgment interest

 Section 408.040 governs the award of pre- and post-judgment interest in tort and non-tort

actions. In subsection 3, the statute provides the mechanism a claimant must follow in order to

be able to recover to prejudgment interest. Section 408.040.3. To satisfy the statute, the offer of

settlement made by the claimant to the opposing party or his insurer must be in writing, sent by

certified mail, accompanied by an affidavit of the claimant describing the nature of the claim,

 9
injuries, and damages and any available supporting documentation, and further accompanied by

a list of medical providers and employers (if a lost wage claim is being made) and executed

records authorizations so the opposing party or its insured can acquire the claimant’s relevant

records. Section 408.040.3(1)-(3). Finally, the statute requires that the written settlement offer

“[r]eference this section and be left open for ninety days.” Section 408.040.3(4).

 The award of such interest “serves two policies: to compensate for the true cost of money

damages incurred and, where liability and damages are fairly certain, to promote settlement and

to deter unfair benefit from the delay of litigation.” Larabee v. Washington, 793 S.W.2d 357,

360 (Mo. App. W.D. 1990) (overruled on other grounds by Emery v. Wal-Mart Stores, Inc., 976

S.W.2d 439 (Mo. banc 1998)).

 So not only are the legislature’s purposes apparent in enacting section 408.040, but the

consequences for a claimant’s failure to follow the specific and detailed requirements are also

clear - the claimant surrenders its opportunity to recover prejudgment interest in the event the

judgment exceeds the section 408.040 offer to settle. It is in this context that the ninety-day

requirement should be read. It is merely one of several specific requirements to be met in order

to be able to recover pre-judgment interest at a later time. It is not, in our judgment, the

legislature’s intent to depart from the common law by stripping from an offeror the right to

revoke an offer or consider a counter-offer a rejection.

 ii. Section 537.058 – Evidence in a bad faith lawsuit

 With respect to section 537.058, one of the key elements in a suit by a tortfeasor-insured

(or his assignee) against his own insurance company for the bad faith refusal to settle is that the

insurance company must be shown to have had a reasonable opportunity to settle and then failed

to do so in bad faith. Zumwalt v. Utilities Insurance Co., 228 S.W.2d 750, 754 (1950); Shobe v.

 10
Kelly, 279 S.W.3d 203, 210 (Mo. App. W.D. 2009). With section 537.058, the legislature has

weighed in on that key element by setting out no fewer than eight requirements with which a

demand for settlement must comply in order to be considered a “reasonable opportunity to settle

for the insurer.” Section 537.058.7. One of those eight requirements is that the demand remain

open for at least ninety days. Id. And if the demand fails to comply with any of those

requirements, the demand “shall not be admissible in any lawsuit alleging extra-contractual

damages against the tort-feasor’s liability insurer.” Id.

 We observe that section 537.058 provides certain clarity with respect to what shall be

considered a “reasonable opportunity to settle” in a later bad-faith-refusal-to-settle suit against

the insurer by codifying the requirement of the demand. The statute benefits the tortfeasor’s

liability insurer by declaring as a matter of law that a demand that does not comply is

inadmissible as evidence against the insurer in subsequent litigation. It is in this context that the

ninety-day requirement should be understood; not as a departure from the common law of

contracts.

 Conclusion

 For the reasons set forth herein, we reverse and remand.

 _______________________________
 James M. Dowd, Judge

Angela T. Quigless, P.J., and
Kurt S. Odenwald, J., concur

 11