

# SUPREME COURT OF MISSOURI
## en banc

CLIFTON JAMESON, )  *Opinion issued April 26, 2022*
)
        Appellant, )
)
v. ) No. SC99279
)
ALEXIS STILL, )
)
        Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable John N. Borbonus, Judge

After Clifton Jameson and Alexis Still were involved in an automobile accident, Jameson sent Still's insurer, MetLife, an offer to settle pursuant to sections 408.040 and 537.058[1] in which he agreed to release all of his legal claims against Still if MetLife agreed to pay Jameson the lesser of $150,000 or all available coverages. MetLife responded with a counteroffer to pay $24,751. Taking MetLife's counteroffer as a rejection of his settlement offer, Jameson sued Still in the circuit court for his damages arising from the accident. MetLife then sent several letters to Jameson attempting to accept his original settlement offer. Still moved for summary judgment, arguing that

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

MetLife's counteroffer did not terminate the settlement offer and that its subsequent letter of acceptance created a settlement agreement between the parties. The circuit court agreed and granted judgment in Still's favor. This Court has jurisdiction, Mo. Const. art. V, sec. 10, and holds there is no settlement agreement between the parties because MetLife's counteroffer constituted a rejection that terminated Jameson's settlement offer under the common law of contracts. The circuit court's entry of summary judgment is vacated, and the case is remanded for further proceedings.

## Background

On December 31, 2018, Still and Jameson were involved in an automobile accident in St. Louis County. According to Jameson, Still's negligence caused the crash and his resulting injuries. On May 20, 2019, Jameson's counsel sent a letter to Still's insurer, MetLife, offering to settle the matter. The letter was titled "Offer to Settle Pursuant to RSMo § 408.040 and RSMo § 537.058" (hereinafter referred to as the "May 20 settlement offer") and provided in relevant part:

> My firm is authorized to offer to settle this matter for the sum of one-hundred and fifty thousand dollars ($150,000.00) or all available coverages, whichever is less, for a full release of any and all claims against Ms. Still. This offer to settle will remain open for ninety (90) days from the date of MetLife Insurance Company's receipt of this offer. … The following must occur within ninety (90) days from the date MetLife receives this offer letter in order to constitute acceptance:
>
> 1) MetLife must complete, execute, and return the enclosed Insurance Company Affidavit ….
>
> 2) MetLife must agree to tender and deliver payment of one-hundred and fifty thousand dollars ($150,000.00) or all available coverages, whichever is less, … to [Jameson's counsel at his law firm] ….

On June 21, 2019, MetLife responded with a letter offering to settle Jameson's claim for $24,751 (hereinafter referred to as the "June 21 counteroffer"). Taking MetLife's June 21 counteroffer as a rejection of his May 20 settlement offer, Jameson filed suit in late June 2019 against Still for his damages arising from the accident.

After Jameson filed suit, MetLife proceeded to send Jameson several letters attempting to accept his May 20 settlement offer. On August 6, 2019, MetLife sent a letter offering to pay its policy limits of $100,000. Jameson did not respond. On August 14, 2019, MetLife sent another letter reiterating its August 6 offer to pay the $100,000 policy limits. The next day, on August 15, 2019, MetLife sent its final letter, which stated, "On behalf of Ms. Still we accept your demand to settle set out in your letter of May 20, 2019." On August 20, 2019, Jameson responded, explaining that the May 20 settlement offer was no longer available because the June 21 counteroffer constituted a rejection that terminated MetLife's ability to later accept the May 20 settlement offer.

In her answer to Jameson's petition for damages, Still pleaded the affirmative defense of settlement. Still alleged that MetLife's counteroffer did not terminate the May 20 settlement offer and that MetLife's August 15 letter constituted an acceptance, thereby settling Jameson's injury claim. Still argued the statutes under which Jameson made the May 20 settlement offer – sections 408.040 and 537.058 – altered the common law rule that a counteroffer operates as a rejection that terminates an offer and required the settlement offer to remain open for 90 days despite any counteroffer or rejection that may occur during that time frame. Still renewed her argument in a motion for summary

3

judgment. The circuit court agreed with Still that a settlement agreement was reached despite MetLife's June 21 counteroffer and granted summary judgment.

**Analysis**

This Court reviews the circuit court's entry of summary judgment *de novo* and views the record in the light most favorable to the non-moving party. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When the defending party moves for summary judgment (as Still did here), it may establish a right to judgment by showing there is no genuine dispute as to the existence of each of the facts necessary to support the movant's affirmative defense. *Id.* at 381. Even if the facts relevant to the affirmative defense are undisputed, however, the movant still must establish the right to judgment as a matter of law. *Id.* As the facts are not disputed here, this Court's inquiry is whether Still established the right to judgment as a matter of law – in other words, whether a settlement agreement was reached between the parties. This turns on the legal question of whether the June 21 counteroffer constituted a rejection that terminated the May 20 settlement offer or whether the May 20 offer survived MetLife's counteroffer and, therefore, was accepted by MetLife's subsequent letter of acceptance.

"The question of whether the parties entered into an enforceable settlement agreement is governed by contract law." *Ste. Genevieve Cnty. Levee Dist. #2 v. Luhr Bros., Inc.*, 288 S.W.3d 779, 783 (Mo. App. 2009) (citing *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 518 (Mo. banc 1988)). "To show a legal, valid settlement agreement, one must prove the essential elements of a contract: offer, acceptance and

4

consideration." *Id.* To be effective, the terms of the acceptance must mirror the terms of the offer, and "[a]ny acceptance that includes new or variant terms from the offer presented amounts to a counter-offer and a rejection of the original offer." *Pride v. Lewis*, 179 S.W.3d 375, 379 (Mo. App. 2005). Thus, under the common law of contracts, which governs the formation of settlement agreements, a counteroffer operates as a rejection that terminates the ability to later accept a settlement offer.

Indeed, both parties agree that the common law generally applies to the formation of settlement agreements and that a counteroffer generally operates as a rejection under the common law. Still argues, however, that the legislature intended to alter this common law counteroffer rule for offers made expressly under sections 408.040 and 537.058. Still asserts the plain language of these statutes renders any such offers irrevocable and "non-rejectable" for 90 days.

It is well established that the legislature has the authority to modify common law rules. *Ordinola v. Univ. Physician Assocs.*, 625 S.W.3d 445, 450 (Mo. banc 2021). However, the legislature must do so "expressly or by necessary implication;" otherwise "the common law rule remains valid." *State ex rel. KCP&L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 20 (Mo. App. 2011). "[N]o statute should be construed to alter the common law further than the words import." *Est. of Williams v. Williams*, 12 S.W.3d 302, 307 (Mo. banc 2000). When "doubts exist about the meaning or intent of words in a statute, the words should be given the meaning which makes the least, rather than the most, change in the common law." *Id.* "To read words and concepts into our statutes

5

that the general assembly did not write shows disrespect to both the general assembly and for the common law." *Overcast v. Billings Mut. Ins.*, 11 S.W.3d 62, 69 (Mo. banc 2000).

Thus, the question now before the Court is whether sections 408.040 and 573.058 demonstrate a legislative intent to alter the common law contract formation rule that a counteroffer operates as a rejection. Because neither statute relates to the ***formation*** of settlement agreements – rather, they each govern distinct issues, as discussed below – this Court holds that neither section alters the common law rule that a counteroffer operates as a rejection of a settlement offer.

Section 408.040, titled "Interest on judgments, how regulated—prejudgment interest allowed when, procedure," is intended to govern interest on judgments and provides when prejudgment interest is allowed. Subsection 1 provides, "Judgments shall accrue interest on the judgment balance as set forth in this section[,]" then proceeds to define "judgment balance" and discuss how postjudgment payments shall be applied. § 408.040.1. Subsection 2 involves interest on judgments in nontort actions. § 408.040.2. Relevant here, subsection 3 governs interest on judgments in tort actions and allows a plaintiff in a tort case to recover prejudgment interest if that party makes an offer of settlement to the opposing party or his or her representative and any subsequent judgment in the case exceeds the amount specified in the settlement offer. § 408.040.3. In addition, subsection 3 provides, "In order to qualify as a demand or offer pursuant to this section, such demand must" meet various requirements and "[r]eference this section and be left open for ninety days." *Id*. Section 408.040, therefore, merely provides a list of items that must be included in a settlement offer for the plaintiff to be entitled to

6

*prejudgment interest* if the case does not settle. It does not, expressly or impliedly, indicate any intent to change the common law rules governing the *formation* of settlement agreements.

Section 537.058, titled "Personal injury, bodily injury, or wrongful death, time-limited demand to settle, requirements," explains what a settlement offer must include to qualify as a "time-limited demand to settle" and governs when evidence of an opportunity to settle is admissible in tort actions for extra-contractual damages, i.e., for bad faith refusal to settle claims. Subsection 1 defines various terms, including "[e]xtra-contractual damages," "[t]ime limited demand," and "[t]ort-feasor," as used in the section. § 537.058.1. Subsection 2 provides that, for an offer to qualify as a "time-limited demand to settle," such offer "shall be in writing, shall reference this section, shall be sent certified mail return-receipt requested to the tort-feasor's liability insurer, and shall contain [various] material terms" such as "[t]he time period within which the offer shall remain open for acceptance by the tort-feasor's liability insurer, which shall not be less than ninety days from the date such demand is received by the liability insurer …." § 537.058.2. Subsection 7 provides that "a time-limited demand that does not comply with the terms of this section shall not be considered as a reasonable opportunity to settle for the insurer and shall not be admissible in any lawsuit alleging extra-contractual damages against the tort-feasor's liability insurer." § 537.058.7. Section 537.058, therefore, lists the requirements for a "time-limited demand" to qualify as "a reasonable opportunity to settle" that is admissible in a bad faith refusal to settle claim against the liability insurer; it does not govern the *formation* of settlement agreements.

7

*Id.* Like section 408.040, section 537.058 does not expressly or impliedly indicate a legislative intent to change common law formation rules regarding settlement agreements.

Because neither section alters the common law regarding formation of settlement agreements, the common law governs. The June 21 counteroffer operated as a rejection of the May 20 settlement offer, terminating MetLife's ability to later accept. The circuit court erred in granting summary judgment for Still on the basis of settlement because no such settlement agreement was reached.

## Conclusion

For the reasons set forth above, the judgment of the circuit court is vacated, and the case is remanded for further proceedings.[2]

_____

Paul C. Wilson, Chief Justice

All concur.

---

[2] This Court expresses no view as to whether the May 20, 2019, letter from Jameson's counsel to Still's insurer satisfied sections 408.040 or 537.058 for purposes of Jameson's entitlement to prejudgment interest should he end up securing a judgment for more than was offered or for purposes of making the offer admissible should he sue the insurer for bad faith refusal to settle.